**In re the ADOPTION OF M.J.C.**

**In re the GUARDIANSHIP OF M.J.C.**

**No. 71A03–9101–CV–18.**

Court of Appeals of Indiana,
Third District.

April 23, 1992.

Stephen G. Drendall, South Bend, for appellant.

James P. Knepp, Michael A. Dvorak, Hahn, Walz, Knepp and Dvorak, South Bend, for appellee.

GARRARD, Judge.

### I. Facts and Procedural History

This is an appeal from an order granting a petition for adoption. We reverse.

The child was born in South Bend, Indiana on January 17, 1981 and her paternity was established July 15, 1981. At the time of her birth, her biological mother (the mother), and her biological father (the father), were unmarried and 17 and 25 years old, respectively. Either immediately before the child's birth or shortly thereafter, the father moved to Houston, Texas. After the child's birth, the mother and the child moved in with the father's mother (the grandmother), and continued living there after the father moved to Texas.

In September 1981, the mother and the child moved to Texas and took up residence with the father. After a short period of time, the mother and the child moved into the home of a male friend of the mother's. In December 1981, or early January 1982, the father took the child out of the mother's home in Houston, Texas without the mother's knowledge or permission. He took the child to his mother's home in Indiana. The mother did not know where the father or the child had gone. Because the grandmother had a full time job, she was unable to care for the child, but she did not believe the father, a substance abuser with few parenting skills, was the proper person to care for his daughter. As a result, on January 8th, 1982 the grandmother placed the child, who was almost one year old, with the foster parents, a family who had offered to care for the child. The father returned to Texas, and later moved to California.

On February 15, 1982, the grandmother filed a petition requesting that she be appointed legal guardian of the child. The grandmother was granted temporary guardianship on February 19, 1982 and permanent guardianship on May 14, 1982. In March 1982, the mother returned to Indiana and approached the grandmother on more than one occasion concerning the whereabouts of her daughter. Each time, the grandmother told her she did not know the whereabouts of the child. From the time of the mother's last inquiry in 1982 until the 1990 adoption proceedings, the mother had no contact with the child.

The child continuously resided with the foster parents from January 8, 1982 until the present time, except for one five-month period in 1982 in which she resided with the grandmother during the week and the foster parents during the weekends. Since the fall of 1986, the foster parents provided all the financial support necessary to raise the child and paid all of her medical and dental expenses. The foster parents made all parental decisions involving the child, including which doctors she should see and which schools she should attend. Although the child was told she had a real father and mother, she refers to the foster parents as her mother and father and has a close relationship with them and their two children.

Throughout her childhood, the child also enjoyed a close relationship with the grandmother, and with her first cousins, particularly the children of her paternal aunt. In 1988, 1989, and 1990, the father periodically spoke with his daughter on the telephone in conversations that were initiated by the grandmother at times when the child was visiting with the grandmother. Some Christmas gifts, birthday presents, and

holiday cards were sent to the child by the father during this same time period.

In November 1988, the grandmother and her husband took the child to California to see the father. This was the first time the father had seen his daughter in six and a half years. In June 1990, the father returned to Indiana and visited his daughter again. During that month, the father also met with the foster parents and told them he wanted to take charge of his daughter. He told them he had purchased airline tickets and planned to take her to California for six weeks. The foster parents thought this was too long a time period because the father had only seen his daughter twice since she was an infant.

As a result, on July 25, 1990, the foster parents petitioned the probate court and were granted a temporary guardianship on the grounds that the grandmother was not effectively performing her duties as the child's guardian, and that the welfare of the child required immediate action. The grandmother's guardianship was suspended without notice to her or a hearing on her behalf. The foster parents also filed a petition to adopt the child. On August 21, 1990, the father appeared and sought to contest the adoption. In open court the child's natural mother filed her final and irrevocable consent to the adoption by the foster parents on October 3, 1990. On August 3, 1990, the grandmother filed a motion for relief from the order appointing the foster parents as temporary guardians. Despite arguments by the grandmother's counsel that the guardianship matter should be heard prior to or simultaneously with the adoption petition, the trial court chose to hear the petition to adopt first, stating that the guardianship matter would become moot if the petition to adopt were granted, but not vice-versa. The trial court also did not recognize the grandmother as a party that had a statutory right to consent or to withhold consent to adoption, but did allow her to participate in the adoption proceedings.

On October 18, 1990 the trial court granted the foster parents' adoption petition and denied the father's motion to contest the adoption. Accordingly, the court found that the grandmother's motion for relief from the order appointing the foster parents as temporary guardians was moot. As a result, the father and the grandmother appeal.

## II. Issues

The grandmother and the father raise the following issues on appeal:

1. Did the trial court err by suspending the grandmother's guardianship and appointing the foster parents as temporary guardians without providing notice and hearing, and in denying the grandmother a hearing to set aside the temporary guardianship?

2. Did the trial court err by granting the adoption petition without the grandmother's consent as legal guardian?

3. Did the trial court err in concluding the requirements of IC 31–3–1–6(g)(1), dispensing with need for the father's consent to adoption, were proven by clear, cogent, and indubitable evidence?

## III. Discussion and Decision

### 1. Suspension of Guardianship

■ The grandmother alleges that because her guardianship was initially terminated without notice to her or without a hearing to contest the action, her due process rights were violated. We disagree.

The grandmother's guardianship rights were not terminated when the court acted upon the foster parents' petition. They were merely suspended. In 1990, Indiana's guardianship statutes provided the means for the trial court to suspend the grandmother's guardianship rights without notice and to appoint the foster parents as temporary guardians in the interim. In relevant part, IC 29–3–6–1 provided the following:

(a) When a petition for appointment of a guardian or for the issuance of a protective order is filed with the court, notice

of the petition and the hearing on the petition shall be given as follows:

\* \* \* \* \* \*

(2) If the petition is for the appointment of a temporary guardian, notice shall be given as required by IC 29-3-3-4(a)....

Because the foster parents petitioned to be appointed temporary guardians, the notice they were required to give the grandmother, if any, is determined by IC 29-3-3-4(a).

IC 29-3-3-4 provides in pertinent part as follows:

(a) If:

(1) a guardian has not been appointed for an incapacitated person or minor;

(2) an emergency exists;

(3) the welfare of the incapacitated person or minor requires immediate action; and

(4) no other person appears to have authority to act in the circumstances;

the court, on petition by any person or on its own motion, may appoint a temporary guardian for the incapacitated person or minor for a specified period not to exceed sixty (60) days. *No such appointment shall be made except after notice and hearing unless it is alleged and found by the court that immediate and irreparable injury to the person or injury, loss, or damage to the property of the alleged incapacitated person or minor may result before the alleged incapacitated person or minor can be heard in response to the petition.* If a temporary guardian is appointed without notice and the alleged incapacitated person or minor files a petition that the guardianship be terminated or the court order modified, the court shall hear and determine the petition at the earliest possible time.

*(b) If the court finds that a previously appointed guardian is not effectively performing fiduciary duties and that the welfare of the protected person requires immediate action, the court may suspend the authority of the previously appointed guardian and appoint a temporary guardian for the protected person for any period fixed by the court. The authority of the previously appointed guardian is suspended as long as a temporary guardian appointed under this subsection has authority to act.*

IC 29-3-3-4(a), (b) (emphasis added).

Reading these two subsections together and contrasting them with the general provisions for the appointment (IC 29-3-6-1) and for the removal (IC 29-3-12-4) of guardians, it seems quite clear that the legislature intended to provide for the emergency appointment of temporary guardians, including the appointment of a temporary guardian when a duly appointed guardian was not effectively performing, without the necessity of notice and hearing. Provision is made for after-the-fact hearing upon request at the earliest possible time. Considering the necessary finding of emergency as a prerequisite to such an appointment, the statute provides all the process that is due.

### 2. Guardian Consent Issue

The grandmother also claims that as guardian, she had a statutory right to consent or not to consent to the child's adoption. We agree.

■ IC 31-3-1-6(a) requires the proposed adoptive parents to establish the written consent of *all* applicable parties listed in the statute. We have previously held that the word "or" between the parties should be construed to mean "and" to the extent that any of the enumerated subsections exist. *See Taylor v. White* (1988), Ind.App., 520 N.E.2d 475, 478. In this case, we find two applicable subsections:

(a) Except as otherwise provided in this section, a petition to adopt a child under eighteen (18) years of age may be granted only if written consent to adoption has been executed by: ...

(2) the mother of a child born out of wedlock and the father of such a child whose paternity has been established by a court proceeding other than the adoption proceeding; [and]

(3) any person, agency, or county department of public welfare having lawful custody of the child whose adoption is being sought; . . . .

IC 31–3–1–6(a)(2), (3).

 The foster parents agree that the parental consent requirement under subsection (2) is applicable, but they contend that subsection (3) is inapplicable even though the grandmother was the child's legal guardian because they claim she did not have "legal custody" of the child. Rather, the foster parents claim they are the child's "legal custodians" because she resides with and is cared for by them. While it is true that in her application for guardianship the grandmother listed the foster parents as the persons having the care and custody of the child, in the order appointing the grandmother as guardian she was appointed guardian "of the person" of the child. We find that as legal guardian, the grandmother had "lawful custody" of the child even if the foster parents had actual physical custody of her. As guardian, the grandmother had all of the responsibilities and authority of a parent, including the power to remove the child from the foster parents' custody. *See* IC 29–3–8–1(a); IC 29–3–8–2(a)(2); IC 29–3–9–2. Accordingly, we find that subsection (3) requires a guardian's consent to adoption where a guardian exists. Further evidence that a guardian's consent is generally required for adoption appears in the provision dispensing with consent to adoption from any of the following:

\* \* \* \* \* \*

(6) Any legal guardian or lawful custodian of the person to be adopted other than a parent who has failed to respond in writing to a request for a period of sixty (60) days or who, after examination of the parent's written reasons for withholding consent, is found by the court to be unreasonably withholding the parent's consent.

IC 31–3–1–6(g)(6). Although the wording of this section is awkward and confusing, we find that it means no consent is required from a non-parent who is legal guardian or lawful custodian if that person

fails to respond for sixty days to a request for consent or if it is determined by the trial court that consent is being unreasonably withheld by such person. *See Stout v. Tippecanoe County Dept. of Pub. Welfare* (1979), 182 Ind.App. 404, 395 N.E.2d 444, 448.

In this case, the grandmother's consent as legal guardian was required unless the trial court found she was unreasonably withholding it.

 The foster parents' claim that because the grandmother's guardianship was suspended at the time of the adoption hearing, the grandmother had no power to consent to the adoption even if the statute normally requires the guardian's consent. We disagree. The mere suspension of guardianship rights without notice or the opportunity to be heard cannot be permitted to work a forfeiture of the guardian's statutory right to consent to adoption. Although the grandmother's guardianship had been suspended, it had not been terminated. Absent her removal as guardian, her consent was necessary to permit adoption in the absence of hearing and determination that her consent might be dispensed with pursuant to IC 31–3–1–6(g)(6). Any other holding would allow the suspension of a person's guardianship in similar cases to be used as a method of bypassing the guardian consent requirement of IC 31–3–1–6.

### 3. Proof of Parental Consent Issue

The father asserts that the trial court erred by finding his consent to the child's adoption was not required. The relevant statute provides in part:

(g) Consent to adoption is not required from any of the following:

(1) A parent or parents, if the child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a period of at least one (1) year the parent fails without justifiable cause to communicate significantly with the child when able to do so or

knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree. (When the parent or parents have made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents.)

IC 31–3–1–6(g)(1). Only one of the three exceptions set forth above needs to be fulfilled to obviate the need for a parent's consent to adoption. In this case, the trial court found that all three exceptions were met. We will uphold the trial court's conclusion that the father's parental consent is not required if the evidence supports any of three exceptions listed above.

■ In order for an adoption to take place without parental consent, the statutory exceptions for abandonment, failure to communicate, or failure to support must be shown by clear, cogent, and indubitable evidence. *In re Adoption of Subzda* (1990), Ind.App., 562 N.E.2d 745, 748, *citing Graham v. Starr* (1981), Ind.App., 415 N.E.2d 772. In our examination of the trial court's decision, we will not weigh conflicting evidence or assess the credibility of witnesses, and we will not disturb the decision unless the evidence at trial led to but one conclusion and the trial court reached an opposite one. *Id.* at 747, 748.

■ As a result of the 1981 paternity action the father was ordered to pay $17.50 per week child support together with the medical expenses for prenatal care and the birth of the child. The court found that from 1982 through 1986 he paid nothing. In 1987 he paid $40 and in 1990 he paid $75. In addition he apparently carried medical insurance on the child for "several months" in 1985 or 1986. Despite a subpoena for his tax records, the father produced none. He testified that he had "no idea" how much he had earned in 1982, and could not even estimate his earnings in 1983. According to his testimony he earned about $9500 in 1984, $15,800 in 1985 and approximately $15,000 per year each year thereafter. He did not provide evidence of any legally sufficient reason that he was unable to pay support.

■ This evidence was sufficient to establish the necessary knowing failure to provide support so as to dispense with his need to consent to the adoption. The cases relied upon by the father are distinguishable. Contrary to the situation which confronted the court in *Adoption of Bryant* (1963), 134 Ind.App. 480, 189 N.E.2d 593, the father in this case was under an order to pay support. In *Adoption of Augustyniak* (1987), Ind.App., 508 N.E.2d 1307, the trial court had determined that the petitioner for adoption had failed to establish the father's failure to support. Thus, the question before us was whether the undisputed evidence led so clearly to a contrary conclusion as to establish failure to support as a matter of law. We merely held that it did not. Finally, *Young v. Young* (1977), 174 Ind.App. 112, 366 N.E.2d 216, relied upon a prior version of the statute which required that the failure to support had to be wilful. The version applicable to these proceedings merely required the failure to be done knowingly, that is, that the father was aware of the high probability that he was failing to provide support. It follows that the court did not err in determining that the father's consent was unnecessary.

We therefore affirm the determination that the father's consent is unnecessary to the proposed adoption. We reverse the grant of adoption, however, and remand for such further proceedings as may be necessary consistent herewith.

Affirmed in part, reversed and remanded in part.

BAKER, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I respectfully dissent to the majority's treatment of Issue 2. The majority holds that the grandmother's consent was necessary for a valid adoption of M.J.C. by the foster parents. I disagree.

The record reveals that grandmother's authority to act as guardian was suspended

pursuant to Indiana Code 29–3–3–4. Indiana Code 29–3–3–4(b) provides:

(b) If the court finds that a previously appointed guardian is not effectively performing fiduciary duties and that the welfare of the protected person requires immediate action, the court may suspend the authority of the previously appointed guardian and appoint a temporary guardian for the protected person for any period fixed by the court. The guardian appointed under this subsection has authority to act.

In subsection (c), the statute outlines the extent of the powers of the temporary guardian:

(c) A temporary guardian appointed under this section has only the responsibilities and powers that are ordered by the court. The court shall order only the powers that are necessary to prevent immediate and substantial injury or loss to the person or property of the alleged incapacitated person or minor in an appointment made under this section.

Thus, the authority of the temporary guardian is delineated by the appointment order entered by the trial court.

The responsibilities and powers of a guardian are outlined in Indiana Code 29–3–8. Indiana Code 29–3–8–2 provides in relevant part:

(a) The guardian of a minor may exercise all of the powers required to perform the guardian's responsibilities, including the following:

\* \* \* \* \* \*

(5) The power to consent to the marriage or adoption of the minor.

The trial judge's order did not specifically mention the power to consent to an adoption. However, it did provide the following:

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED as follows:

A. That the authority previously granted to [grandmother] as Guardian of the Estate and Person of [M.J.C.] be, and the same is hereby, suspended;

B. That [foster parents] be, and are hereby, appointed Temporary Guardian of [M.J.C.];

C. That the duration of this Temporary Guardianship shall continue at least until this Court can hear and determine the Petition for Adoption of [M.J.C.] filed in this court by [foster parents];

D. That the Guardians shall have the sole and exclusive authority to exercise custody and control of [M.J.C.] during the pendency of this Temporary Guardianship;

E. That the Guardians be, and are hereby, permitted to limit and restrict visitation with [M.J.C.] by all persons deemed by the Guardians not to be in the best interest of [M.J.C.].

Record, p. 27. It is not clear from the order whether the trial court intended to grant the foster parents the authority to consent to the adoption.

Two conclusions are possible. The first is that the trial court intended to confer authority on the foster parents to consent to M.J.C.'s adoption. Under this scenario, the foster parents would be the requisite party to give consent pursuant to the adoption statute, which requires a valid written consent executed by:

(3) any person, agency, or county department of public welfare having lawful custody of the child whose adoption is being sought.

Indiana Code 31–3–1–6(a)(3). Clearly, the foster parents, not the grandmother, are the persons with lawful, albeit temporary, custody of M.J.C. Consent to adoption was obviously given by the foster parents, as they petitioned for the adoption.

Under the second scenario, the trial court did not intend to confer upon the foster parents the authority to consent to the adoption.[1] In this instance, the legal guardians of the child, the foster parents, do not have the power to consent to the

---

**1.** Or the trial court was not authorized to confer upon the foster parents the power to consent to the adoption under the temporary guardian statute, which allows the court to "order only the powers that are necessary to prevent immediate and substantial injury or loss to the person or property of the alleged incapacitated person or minor." IC 29–3–3–4(c).

adoption, and Indiana Code 31–3–1–6(a)(4) is applicable. That subsection of the adoption statute permits an adoption if written consent to an adoption is executed by:

(4) the court having jurisdiction of the custody of the child, if the legal guardian or custodian of the person of the child is not empowered to consent to the adoption.

Here, the trial court gave its consent to the adoption via its order, in which it stated, inter alia:

The evidence unequivocally leads to but one (1) conclusion. It would be in [M.J.C.]'s best interests to have [foster parents] to become her parents.

Record, p. 15.

Clearly, regardless of how the trial court's temporary guardianship order is interpreted, the grandmother has no power to consent (or withhold consent) to the adoption under the adoption statute. Consent to the adoption was given by the mother, the foster parents, and the court. Consent was not necessary from the father pursuant to Indiana Code 31–3–1–6. Therefore, consent to the adoption was given by all necessary parties and the trial court correctly granted the adoption.

I would affirm the judgment of the trial court in its entirety.