**In the Matter of the Adoption of B.C.S., a minor.**

**Charles and Mary Gerweck, Appellants–Petitioners,**

v.

**Thomas E. Schoenradt, Appellee–Counter–Petitioner.**

No. 09A02–0211–CV–918.

Court of Appeals of Indiana.

July 22, 2003.

Jay T. Hirschauer, Hirschauer & Hirschauer, Logansport, IN, Attorney for Appellant.

Leo Burns, Leeman & Burns, Logansport, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Charles and Mary Gerweck ("the Gerwecks") appeal the Cass Circuit Court's[1] denial of their petition to adopt B.C.S. and grant of Thomas E. Schoenradt's petition to adopt B.C.S. The Gerwecks raise four issues,[2] three of which we reorder and restate as:

---

1. Proceedings relevant to this appeal occurred in both the Cass Circuit Court and the Madison Superior Court. Hereinafter, the Madison Superior Court will be referred to as "the Madison Superior Court." References to "the trial court" or "the court" will indicate the Cass Circuit Court.

2. One of the issues raised by the Gerwecks was whether the trial court's judgment must

be set aside because the trial court failed to include in its order the "essential findings" required by Ind.Code § 31–19–11–1(a). On May 22, 2003, we issued a memorandum opinion in which we retained jurisdiction over this appeal and ordered the trial court to enter specific findings regarding subsections (a)(2), (a)(4), (a)(5), (a)(6), and (a)(8) of Ind. Code § 31–19–11–1. *In re B.C.S.*, 789 N.E.2d

1. Whether the trial court's failure to appoint a guardian ad litem constitutes reversible error;

2. Whether the trial court abused its discretion when it relied on hearsay documents admitted without objection; and

3. Whether the trial court's denial of the Gerwecks' petition and grant of Schoenradt's petition was contrary to law.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Prior to the events leading to these proceedings, B.C.S.'s biological mother, Angie Smith, had given birth to three children, J., M., and D. M. and D. live with their biological fathers and have little or no contact with Smith's family. The Gerwecks, who are Smith's maternal aunt and uncle, adopted J., and he continues to live with them.

On January 6, 1996, Schoenradt met Smith. In June of 1996, Smith moved into Schoenradt's house. On December 15, 1996, Smith gave birth to B.C.S. Schoenradt was present at B.C.S.'s birth and gave B.C.S. his last name. Schoenradt believed B.C.S. was his biological daughter and cared for her, both physically and financially, as if she were his biological child. Schoenradt, Smith, and B.C.S. lived in the same house until April of 1999, when Schoenradt moved out because he and Smith were fighting a lot, apparently due in part to Smith's drug habit. After he moved out, Schoenradt spent four hours each evening with B.C.S. and took care of her every weekend. He continued to provide money for Smith and B.C.S. even though Smith had not obtained a court order.

"A few months before" March of 2001, Smith miscarried triplets. (Tr. at 8.) Due to extreme blood loss, Smith became very ill and went to stay with her mother in Michigan. During that time, B.C.S. stayed with the Gerwecks and met her half-brother, J., for the first time.

On March 16, 2001, Smith died of a drug overdose. On March 20, 2001, Schoenradt filed in the Madison Superior Court an emergency petition to establish temporary custody and a petition to establish paternity. The Madison Superior Court entered an order granting emergency custody to Schoenradt. On April 24, 2001, the Gerwecks filed a petition to intervene and a request for paternity testing. Paternity testing revealed that Schoenradt is not the biological father of B.C.S. Nevertheless, the Madison Superior Court maintained temporary custody with Schoenradt. On June 21, 2001, the Madison Superior Court named a court appointed special advocate ("CASA") for B.C.S.

On August 10, 2001, the Gerwecks filed in the Cass Circuit Court[3] a petition to adopt B.C.S. On August 31, 2001, they filed a petition for home study and a praecipe for service by publication, which directed the newspaper in Elwood, Indiana, to publish notice of the adoption of B.C.S. On September 12, 2001, the Gerwecks filed an alias notice to unnamed father directed to Schoenradt. On September 14, 2001, Schoenradt received and signed the alias notice. On September 21, 2001, the court ordered a study of the Gerwecks' home in Michigan.

107 (Ind.Ct.App.2003). The trial court entered its supplemental findings on June 9, 2003, and those findings address all of the concerns the Gerwecks raised regarding missing findings. We now address the remaining issues raised by the Gerwecks.

3. Schoenradt, Smith, and B.C.S. lived in Anderson. At some point, Schoenradt moved from Anderson to Logansport, where his family lives. When Schoenradt was given emergency custody of B.C.S., she moved to Logansport with him.

On September 24, 2001, Schoenradt filed a motion to contest the Gerwecks' adoption. On November 9, 2001, Schoenradt filed a counter-petition for adoption of B.C.S. On January 23, 2002, Schoenradt petitioned for a home study. That petition was granted. The Cass County Division of Family and Children conducted a study of Schoenradt's home and filed a report on April 1, 2002.

On June 7, 2002, Schoenradt petitioned the court to make a determination regarding custody of B.C.S. pending further hearing on the petitions for adoption. That same day, the court entered an order granting Schoenradt custody of B.C.S. during the proceedings and ordering visitation for the Gerwecks. On July 2, 2002, Schoenradt filed a motion for a hearing on his counter-petition for adoption. On July 12, 2002, the CASA filed her report with the Madison Superior Court.

On August 23, 2002, Schoenradt filed a "pre-hearing report" officially informing the court that there was a paternity action pending in Madison County and including a copy of the chronological case summary from the paternity case.[4] (Appellant's App. at 5.) On August 28, 2002, the Gerwecks filed their home study that was conducted by the Family Counseling and Children's Services of Lenawee County, Michigan. On August 29, 2002, the trial court received evidence from the Gerwecks and Schoenradt, including the CASA report submitted to the Madison Superior Court.

On October 8, 2002, the court entered the following findings and order:

1. [B.C.S.] was born to [Smith], December 15, 1996, in Madison County, Indiana. At the time of birth, [Smith] and [Schoenradt] were in a relationship that began in January, 1996.

2. [B.C.S.] was [Smith's] fourth child. Two of her sons are with their fathers, and [Smith's] family has not kept in touch with them. [Smith's] third child, [J.], born December 18, 1988, was adopted by [the Gerwecks] the day before his sixth birthday.

3. It is unrebutted that [Schoenradt] persuaded [Smith] not to follow her first plan, to have an abortion, on a pledge that he would always be there for her and the child. [Schoenradt] was in the delivery room, declared to hospital personnel that he was the father, and testified that he believed himself to be [B.C.S's] father.

4. [Schoenradt] and [Smith] lived together for approximately the first two years of [B.C.S's] life. When [Smith's] continued drug addiction led to their separation, [Schoenradt] continued to parent [B.C.S] for approximately four hours each weekday and to take care of her each weekend. [Schoenradt] further provided financial support for

---

**4.** The trial court did not respond to Schoenradt's "report." In the interest of completeness, we note the following. While statements in the parties' pleadings notified the trial court that paternity proceedings regarding B.C.S. were occurring in the Madison Superior Court, neither party filed a motion to dismiss the proceedings in either the Madison Superior Court or the Cass Circuit Court. Whether the Cass Circuit Court or the Madison Superior Court had jurisdiction over this adoption case is a matter of jurisdiction over the case, rather than subject matter jurisdiction. *See Grand Trunk W. R. Co. v. Kapitan,* 698 N.E.2d 363, 365 (Ind.Ct.App.1998), *trans. denied,* 714 N.E.2d 163 (Ind.1999). Because Schoenradt failed to file a motion to dismiss the Gerwecks' petition for adoption in the Cass Circuit Court within twenty days of the petition pursuant to Trial Rule 12(B)(8), he has waived any possible jurisdictional argument. *See id.* Consequently, his untimely "report" to the court, which was filed over a year after the Gerwecks' petition for adoption, could not revive that argument, and we address the trial court's judgment on the merits.

[Smith] and [B.C.S.], though not ordered to do so by any legal process, and apparently in excess of any sum that would have been determined pursuant to the child support guidelines, according to [Schoenradt's] unrebutted testimony.

5. When [Smith] overdosed on drugs, [Schoenradt] assumed the full-time responsibilities of fatherhood. Though a test taken by [Schoenradt] to prove his paternity in fact proved that he was not [B.C.S.'s] biological father, he has been from the beginning and continues to this day to be [B.C.S.'s] father in terms that matter most. The bond between the two is very strong. [Schoenradt] has always been [B.C.S.'s] strongest support and source of love and nurture.

[Schoenradt] has taken nurturing classes given by the Office of Family and Children; fed her, changed her and bathed her as an infant; enrolled [B.C.S] in pre-school—now in kindergarten; has her participating in gymnastics and swimming at the local family Y; has attended to her health care and nursed her through her illnesses.

6. Elaine Fuller, the CASA appointed by Madison Superior Court II reports that " . . . it is very apparent [Schoenradt] is more concerned with [B.C.S.'s] well being than anything else." As the only person who made an extensive examination of all parties and influences in [B.C.S's] life, including more than 34 hours of investigation and study, Ms. Fuller's report is given appropriate due consideration. She observes, "This case comes down to the effects of 'nature' and 'nurture' in a child's development. This placement decision it is expressed in terms of whether blood is thicker than water. I don't think it is in this case."

7. Home studies of both Gerweck and Schoenradt homes were filed and indicated that both parties would provide a good home for [B.C.S.].

8. Both parties include church attendance and involvement as a part of their way of life.

9. The CASA also expresses concern that [B.C.S.'s] great aunt Mary's emphasis of the importance of the **blood** bond in the presence of [B.C.S.] is not helpful. "Unfortunately this has caused [B.C.S.] to have many questions about her own blood and where did it come from etc. This is very confusing for a five year old."

10. Ramona Mahoney, the case manager who conducted the Adoption Home Study of the Schoenradt home, strongly endorsed the Schoenradt adoption, observing,

> The emotional effect of [B.C.S.] losing both her mother to death, and the only father she has ever known could be devastating, and appears to be a trauma that is unnecessary as [Schoenradt] is anxious to continue to fulfill the role of parent to [B.C.S.]. An explanation of biological and legal would give her no consolation and may confuse her further as the reasons may be beyond what a five-year-old could comprehend. [Schoenradt] and [B.C.S.] already have a strong emotional parent-child relationship, therefore it is the recommendation of the Cass County Division of Family and Children that the relationship also become legal with the court's approval of his adoption/permanent custody of her.

When considered with all the testimony and evidence submitted, the recommendation of the Cass County Division of Family and Children is persuasive.

11. It is in the best interest of [B.C.S.] that the Counter–Petition for Adoption filed by [Schoenradt] be grant-

ed and that the Petition for Adoption filed by [the Gerwecks] be denied.

12. As a result of the visitation provided by order of the Madison Superior Court, the Gerwecks and [B.C.S.] have been given the opportunity to form firm bonds. It is in [B.C.S.'s] best interests to maintain a continuing contact with her mother's relatives, provided such contact does not involve an environment hostile to the relationship of [B.C.S.] with her adoptive father.

(Appellant's App. at 76–78.) (Emphasis in original.)

The Gerwecks appealed, raising four issues. On May 22, 2003, we determined that the trial court's adoption order contained insufficient findings and remanded the cause to the court for entry of additional findings. *In re B.C.S.*, 789 N.E.2d 107 (Ind.Ct.App.2003). On June 9, 2003, the trial court entered the following relevant supplemental findings:

This cause remanded for explicit findings regarding subsections (a)(2), (a)(4), (a)(5), (a)(6) and (a)(8) of Indiana Code § 31–19–11–1(a). Based upon the hearing conducted August 29, 2002, the testimony and evidence submitted, the Court now amends its order of October 8, 2002, and enters the following additional findings:

1. § 31–19–11–1(a)(2) Counter–Petitioner Schoenradt received a Bachelor of Arts degree in German from Anderson University. Schoenradt, whose family heritage is German, has served in the military and worked as a civilian in Germany for a period of four years, including employment with IBM. Though Schoenradt has expressed a desire to complete graduate work and teach on the college level, his employment history indicates that he currently has a sufficient ability to rear [B.C.S.] and to fur-

nish suitable support and education for her.

2. § 31–19–11–1(a)4, 5 and 6 At the time of the hearing, the Court file contained a photocopy of a completed State Form 46784(9–94), Putative Father Registry Transmittal (IC 31–3–1.5), together with a copy of a check issued by Attorney James D. Gillespie to the Indiana State Board of Health in the sum of $50.00. The Court file also included at the time of hearing a Praecipe for Publication in the Elwood Call Leader, a newspaper of general circulation in Madison County where the mother lived at the time of the child's conception, and a copy of an Alias Notice to Unnamed Father, together with certified mail returns indicating service on Thomas Schoenradt, the Indiana State Department of Health Vital Records Section, Cass County Division of Family and Children, and State of Indiana Division of Family and Children.

A Putative Father Registry Affidavit dated June 5, 2003, and filed with the Court on June 9, 2003, states that no putative father is registered, and further, that "a paternity determination is on file with the department." Such Paternity Determination form was executed by the deceased mother, Angela Smith, and by Counter–Petitioner, Thomas Schoenradt, on December 15, 1996, the date of the child's birth.

Proper notice of the adoption proceeding was given to Thomas Schoenradt, whose paternity determination was on file with the Indiana State Department of Health Vital Records Section. A copy of the paternity determination was attached to the State Department of Health's Affidavit and filed with the Court.

3. § 31–19–11–1(a)(8) The home study conducted by Ramona Mahoney,

Family Case Manager II with the Cass County Division of Family and Children, and filed with the Court on April 1, 2002, states:

"A criminal history background check was sent to the IndianaState [sic] Police is [sic] regard to Thomas Schoenradt. Based on name, date of birth, sex, and race, there was no criminal record."

No evidence has been presented which in any manner casts doubt upon the report of the Cass County Division of Family and Children. The Court finds no inappropriate criminal history in Counter–Petitioner Schoenradt's background.

(Supplemental Findings Upon Remand at 1–2) (hereinafter "Supp. Findings").[5]

### DISCUSSION AND DECISION

1. *Guardian ad litem*

■■■■■ The Gerwecks argue reversible error occurred because a guardian ad litem was not appointed to represent B.C.S.'s interests in the proceedings. Ac-

cording to the Gerwecks, both Ind.Code § 29–3–2–3[6] and Ind. Trial Rule 17(C)[7] required the trial court to appoint a guardian ad litem. However, the trial court has discretion to determine whether a minor is adequately represented in the proceedings such that no guardian ad litem is necessary. *In re Adoption of L.C.*, 650 N.E.2d 726, 732–33 (Ind.Ct.App.1995), *reh'g denied, trans. denied, cert. denied sub nom. Newman v. Worcester County Dept. of Soc. Servs.*, 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996).

A guardian ad litem is:

[A]n attorney, a volunteer, or an employee of a county program designated under IC 33–2.1–7–3.1 who is appointed by a court to:

(1) represent and protect the best interests of a child; and

(2) provide the child with services requested by the court, including:

(A) researching;

(B) examining;

(C) advocating;

---

**5.** As a final finding, the trial court's order provided:

4. The attorney for Charles and Mary Gerweck, Mr. Hirschauer, has filed on June 4, 2003, a Verified Notice to Court which states that he has located the biological father of the child who "wishes to assert his rights as father of the minor child, [B.C.S.], and wishes to have some relationship with the child."

Neither Mr. Hirschauer nor any other attorney has entered an appearance with the Court for on in behalf of the purported biological father. The Court finds no basis in facts or in law to support a further evidentiary hearing as requested by counsel for the Gerwecks.

(Supp. Findings at 2.) Because the Gerwecks do not have standing to assert a claim on behalf of this alleged biological father and because we have not been notified that the alleged biological father has taken any action, we ignore this finding as irrelevant to the questions before us.

**6.** Ind.Code § 29–3–2–3 provides, in part:

(a) Unless waived under subsection (b) or if section 4 of this chapter does not apply, the court shall appoint a guardian ad litem to represent the interests of the alleged incapacitated person or minor if the court determines that the alleged incapacitated person or minor is not represented or is not adequately represented by counsel. If not precluded by a conflict of interest, a guardian ad litem may be appointed to represent several persons or interests. The court as part of the record of the proceeding shall set out its reasons for appointing a guardian ad litem.

**7.** That rule provides, in pertinent part, "If an infant or incompetent person is not represented, or is not adequately represented, the court shall appoint a guardian ad litem for him." T.R. 17(C).

(D) facilitating; and

(E) monitoring;

the child's situation.

A guardian ad litem who is not an attorney must complete the same court approved training program that is required for a court appointed special advocate under section 28 of this chapter.

Ind.Code § 31–9–2–50.

While the court did not appoint a guardian ad litem to represent B.C.S.'s interests, it did accept a report from a CASA appointed by the Madison Superior Court. A CASA is defined as:

[A] community volunteer who:

(1) has completed a training program approved by the court;

(2) has been appointed by a court to represent and protect the best interests of a child; and

(3) may research, examine, advocate, facilitate, and monitor a child's situation.

Ind.Code § 31–9–2–28.

Under the statutory definitions, a CASA and a guardian ad litem function in the same capacity at the trial court. Each represents and protects the best interests of the child by researching, examining, advocating, facilitating, and monitoring a child's situation. Consequently, the report the trial court received from the Madison County CASA is essentially the same report that the court would have received if it had appointed its own guardian ad litem for B.C.S. B.C.S.'s interests were adequately represented in this proceeding by the CASA. In these circumstances, the trial court's failure to appoint a guardian ad litem could not amount to reversible error. *See, e.g., L.C.,* 650 N.E.2d at 733.

2. *Hearsay documents*

■ The Gerwecks claim the trial court abused its discretion by considering hearsay reports when making its decision regarding the adoption of B.C.S. The hearsay reports at issue are the report by the CASA of the Madison Superior Court, the home study of the Gerwecks, and the home study of Schoenradt.

Schoenradt notes the Gerwecks offered both the CASA report and their home study into evidence during Mary's testimony. Both documents were admitted without objection from Schoenradt. (*See* Appellant's App. at 112, 113.) In addition, we note that after presenting all of his witnesses, Schoenradt's counsel said:

> I don't have any additional evidence, any additional witnesses, Judge. Just I believe we've covered on the record the submission of the home study in Michigan, you have that before you. There's a stipulation. You have the CASA report from Madison County admitted as an—and you have the Cass County home study as part of the record. . . .

(Appellant's App. at 213.) The Court replied, "I do." (*Id.*)

It is well settled that a party may not sit idly by at trial allowing an error to occur without objection and then raise such error on appeal. *Smith v. Miller Builders, Inc.,* 741 N.E.2d 731, 739 (Ind.Ct.App.2000). *See also Scott v. Crussen,* 741 N.E.2d 743, 748 (Ind.Ct.App.2000), *reh'g denied, trans. denied,* 761 N.E.2d 413 (Ind.2001); *Joe v. Lebow,* 670 N.E.2d 9, 21 n. 11 (Ind.Ct.App. 1996). In addition, a party may not appeal invited error. *Beeching v. Levee,* 764 N.E.2d 669, 674 (Ind.Ct.App.2002) (holding appellant waived arguments regarding admissibility of grievances when he offered five of them for admission himself).

The Gerwecks appeal the trial court's consideration of hearsay contained in three documents. They failed to object to Schoenradt's and the trial court's acknowledgment that the Cass County home study was part of the record, and they them-

selves offered into evidence the other two documents. Accordingly, they have waived any error that may have occurred when the trial court considered hearsay documents in deciding a contested adoption.

### 3. *Grant of Schoenradt's petition*

 The Gerwecks claim the trial court erred by granting Schoenradt's petition to adopt B.C.S. and denying their petition to adopt B.C.S. We review a trial court's grant of a petition to adopt to determine whether sufficient evidence exists to support the trial court's decision. *Irvin v. Hood,* 712 N.E.2d 1012, 1013 (Ind. Ct.App.1999). We may neither reweigh the evidence nor reassess the credibility of the witnesses, and we must consider only the evidence and inferences therefrom most favorable to the trial court's decision. *Id.* We may not reverse "unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion." *Id.* at 1047.

The Gerwecks argue that the trial court erred because "the evidence adduced at trial indubitably established that the petition by the Gerwecks should have been granted." (Appellant's Br. at 18.) The Gerwecks believe that B.C.S.'s best interests are served by placing her in a family with her half-brother and other "blood family." (*Id.* at 20.) To support these arguments, they claim "blood is thicker than water" and that Ind.Code § 31–19–8–6 indicates siblings should be kept together when possible. (*Id.* at 22.)

Ind.Code § 31–19–8–6 discusses the items that should be included in a licensed child placing agency's report to the court. The statute provides, in pertinent part: "(a) The agency's report must, to the extent possible, include the following: ... (3) Whether the child is classified as hard to place: ... (B) because the child is a mem-ber of a sibling group that should be placed in the same home." I.C. 31–19–8–6(a). While that subsection could be read to imply a preference for placing sibling groups in the same home, it by no means indicates that siblings *must* be placed in the same home. Moreover, B.C.S. and J. are not a typical "sibling group." They interacted once before the death of their mother and have spent visitation time together since then; they are not children who grew up in the same household for a number of years. Ind.Code § 31–19–8–6 does not require us to reverse the trial court's decision.

Nor are we swayed by the Gerwecks' argument that "blood is thicker than water." First, as the Gerwecks acknowledge in their brief, Indiana law does not give preferential treatment to blood relatives who seek to adopt a child. *See, e.g., In re R.L.R.,* 784 N.E.2d 964, 970 (Ind.Ct.App. 2003) (ordering grant of step-mother's petition to adopt child despite biological mother's renewed desire to establish a relationship with the child). Second, the "water" in this case is a man who accepted responsibility for B.C.S. from before the time she was born. He was at her birth. He gave her his name. He filed a paternity determination establishing his paternity at her birth. He fed, clothed, and tended to her when she was sick. After he left her mother, he spent time with B.C.S. daily and provided for her financially without a court order requiring him to do so. When Smith died, he immediately took B.C.S. into his home and has continued to care for her. Even after he found out B.C.S. was not his biological child, he continued his quest to adopt her. While we have no doubt a child's knowledge and understanding of her biological heritage can be important for emotional and medical history reasons, we decline to hold that biology is more important than a child's

relationship with a man who has been, as the trial court so aptly put it, "[B.C.S.'s] father in terms that matter most." (Appellant's App. at 77.)

The Gerwecks essentially ask us to reweigh the evidence, which is a task our standard of review prohibits. We have no doubt the Gerwecks would have provided a good home for B.C.S., and we respect and admire their desire to adopt and care for another child. However, we cannot say the trial court's decision to grant Schoenradt's petition was contrary to law. The evidence supports the trial court's decision, and we therefore affirm.

Affirmed.

MATHIAS, J., and KIRSCH, J., concur.