931 N.E.2d 400 (2010)
In re the ADOPTION OF H.L.W., JR. (Minor Child), H.L.W., Sr., and, the Indiana Department of Child Services (DCS), Appellants-Respondents.
v.
L.M.D. & D.P.D., Appellees-Petitioners.
No. 71A03-0911-CV-516.
Court of Appeals of Indiana.
July 28, 2010.
*401 Robert J. Henke, Indianapolis, IN, David E. Corey, Greenfield, IN, Sharon R. Albrecht, South Bend, IN, Attorneys for Appellant, Indiana Department of Child Services.
Aric J. Rutkowski, South Bend, IN, Attorney for Appellant, H.L.W., Sr.
Debra Voltz-Miller, South Bend, IN, Attorney for Appellees.

OPINION
BARNES, Judge.

Case Summary
The Indiana Department of Child Services ("DCS") and H.L.W., Sr. ("Father") appeal the trial court's granting of an adoption petition filed by L.M.D. and D.P.D. ("Foster Parents") regarding H.L.W., Jr. ("Child"). We reverse.

Issues
DCS raises several issues, which we consolidate and restate as:
I. whether the trial court had jurisdiction to grant the adoption petition after the trial court also approved a CHINS permanency plan for reunification of Child with Father;
II. whether the trial court erred when it found that DCS was not acting in Child's best interest when it withheld consent to the adoption; and
III. whether the trial court erred when it found that Father's consent to the adoption was unnecessary because he failed to pay child support to DCS on behalf of Child for one year.
*402 Father raises one issue, which we restate as whether the trial court erred when it found that his consent to the adoption was unnecessary because he failed to pay child support to DCS on behalf of Child for one year.

Facts
Child was born on March 21, 2006, and tested positive for cocaine and benzodiazepines. Child's biological mother, C.C. ("Mother") admitted to using crack cocaine repeatedly during her pregnancy. Without naming Child, Mother left the hospital without Child and against medical advice. Mother returned a few days later with Father and signed paperwork listing Father at the putative father.
On March 24, 2006, DCS detained Child from the hospital and placed him in foster care. The DCS filed a petition alleging that Child was a child in need of services ("CHINS"), and the trial court granted that petition. The trial court ordered that Child was a ward of the DCS and was to remain in foster care. Child was soon readmitted to the hospital for symptoms of drug withdrawal. The initial foster parents were unable to care for Child, and DCS placed him with Foster Parents.
Mother was uncooperative with DCS, and it eventually filed a petition to terminate her parental rights, which was granted in September 2006. Despite the termination of Mother's parental rights, the goal of the CHINS action was reunification with Father. The trial court filed a dispositional order that required Father to: (1) visit with the Child; (2) submit to random drug screens; (3) complete a parenting assessment and follow all recommendations; (4) complete a psychological evaluation and follow all recommendations; (5) maintain stable employment; (6) remain drug free; (7) maintain consistent contact with the DCS; and (8) establish paternity.
Father established paternity and, in July 2006, he was ordered to pay $41 per week in child support. The child support was ordered to be transferred to the CHINS case and paid to DCS for the cost of placement. Father had a construction business, but his business failed in 2006. He also owned some rental properties, but those were foreclosed. Father tried to do handyman work, but he had little business in 2007. Father made no child support payments to DCS between November 17, 2006, and November 30, 2007.
Father was initially resistant to comply with DCS's requirements. He had a drug test on April 20, 2007 that was positive for cocaine. He also had drug tests on March 14, 2007 and May 22, 2007 that were negative but "dilute." Appellee's App. pp. 109, 111. Throughout the remainder of the proceedings, Father had no further positive drug screens. Father eventually began complying with DCS's requirements and participated in services.
Although Father was inconsistent in paying child support, he found appropriate housing, completed drug and alcohol treatment, participated in parenting education, complied with visitations, completed a psychological and parenting assessment, and maintained contact with his DCS family case manager. His visitations with Child increased from supervised to unsupervised and, by early 2009, Father had unsupervised visitation with Child each week from Saturday through Tuesday. DCS recommended reunification of Child with Father, and the trial court approved that plan in both March 2008 and March 2009. In August 2009, DCS filed its required progress report with the trial court. DCS noted that there was "No Court Ordered Child Support/Reimbursement." DCS's App. p. 190.
Despite the reunification plan, in April 2009, Foster Parents filed a petition with *403 the same trial court to adopt Child. Father and DCS filed motions to contest the adoption. In August 2009, the trial court held hearings on the Foster Parents' petition to adopt. At the hearings, DCS noted that Father and Child are bonded and that DCS's plan was reunification of Child with Father. The DCS family case manager testified that Father had a long history of supervised and unsupervised visitation leading up to the current overnight visitations. The case manager had no concerns for "the child's safety and wellbeing" in Father's care. Tr. p. 218.
In November 2009, the trial court issued findings of fact and conclusions thereon denying DCS's motion to contest the adoption and Father's motion to contest the adoption and granting Foster Parents' petition to adopt Child. The trial court found that Father's consent to the adoption was not required because:
In 2007 and 2008, child support from father totaled $150.00 with no support being paid from November 17, 2006, through November 30, 2007. At the time, father was employed as a contractor and owned several rental properties.
The evidence is clear and convincing; therefore, father's consent to the adoption is not required.
DCS's App. p. 31. As for DCS, the trial court found that:
[A] petition for adoption may be granted over the refusal of DCS to consent if it is shown that DCS is not acting in the child's best interest in withholding consent.. . . The DCS offered no evidence to show that the adoptive parents were not fit; to the contrary, at each CHINS review hearing the DCS offered evidence and the Court found that the child's placement with the adoptive parents met the special needs and best interest of the child. The only evidence presented by DCS was that father had (reluctantly) complied [with] most of the requirements of the CHINS dispositional decree and because the child would be with family. Mere biological relationship is not sufficient to support the burden of proof which the DCS must meet.
DCS has failed to carry its burden of proof.
The evidence is clear and convincing; therefore, the consent of DCS to the adoption is not required.
Id. (internal citations omitted). DCS filed a motion to stay the adoption proceedings pending appeal, and the trial court granted the motion.

Analysis
At the parties' request, the trial court entered findings of fact and conclusions thereon in granting Foster Parents' petition to adopt Child. When reviewing findings of fact and conclusions of law entered pursuant Indiana Trial Rule 52(A), we apply a two-tiered standard of review. In re G.Y., 904 N.E.2d 1257, 1260 (Ind.2009). First, we determine whether the evidence supports the findings. Id. Second, we determine whether the findings support the judgment. Id. We will set aside the trial court's judgment only if it is clearly erroneous. Id. A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.

I. Jurisdiction
DCS argues that the trial court had no jurisdiction to grant the adoption petition after the trial court also approved a CHINS permanency plan for reunification of Child with Father. According to DCS, "the probate court did not have jurisdiction to act contrary to the permanency plan established and supported by the exact same court in the CHINS case." DCS's Appellant's Br. p. 18.
*404 Although the DCS phrases its argument in terms of the trial court's "jurisdiction," our supreme court has observed that Indiana trial courts have two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction. K.S. v. State, 849 N.E.2d 538, 540 (Ind.2006). The court disapproved of the phrase "jurisdiction over a particular case," holding that the phrase confuses "actual jurisdiction with legal error." Id. Indiana Code Section 31-19-1-2 provides that probate courts have exclusive jurisdiction in all adoption cases. Indiana Code Section 31-30-1-1 provides that juvenile courts have exclusive jurisdiction over proceedings in which a child is alleged to be a CHINS.[1] In St. Joseph County, where these proceedings were filed, the "probate court has exclusive juvenile jurisdiction." Ind.Code § 33-31-1-9(b). Consequently, the trial court here had subject matter jurisdiction over both the adoption and CHINS actions.[2] Given our supreme court's holding in K.S., DCS's arguments are more accurately described as a "legal error" rather than a jurisdictional error.
The "jurisdiction" conflict between juvenile courts considering CHINS actions and probate courts considering adoption actions is not new to Indiana courts. In In re T.B., 622 N.E.2d 921 (Ind.1993), our supreme court considered whether a probate court had the power to revoke an adoption where the child was also the subject of a CHINS action in a juvenile court. The court held:
An action for adoption and a CHINS proceeding, however, are separate actions which affect different rights. The CHINS proceeding is directed at helping the child directly by assuring that the child receives necessary assistance. See Ind.Code § 31-6-4-3 [repealed by Pub.L. No. 1-1997, § 157; see generally Ind.Code §§ 31-34]. Adoption, on the other hand, establishes a family unit. An adoption "severs the child entirely from its own family tree and engrafts it upon that of another." Matter of Adoption of Thomas (1982), Ind.App., 431 N.E.2d 506, 513. As a result of the adoption, the adopted child becomes the legal child of the adoptive parent. In re Visitation of Menzie (1984), Ind. App., 469 N.E.2d 1225, 1227.
The legislature established the jurisdiction of juvenile courts and probate courts. The juvenile court was expressly given jurisdiction over CHINS proceedings and, similarly, a court with probate jurisdiction was expressly given jurisdiction over adoption matters. The power to adjudicate either matter does not divest the other court of its respective jurisdiction. Consequently, a court with probate jurisdiction may adjudicate an adoption matter simultaneously with the juvenile court's adjudication of a CHINS proceeding.
T.B., 622 N.E.2d at 924.
In In re E.B., 733 N.E.2d 4 (Ind.Ct.App. 2000), trans. denied, we considered a similar issue. In E.B., a child was declared a CHINS and placed in foster care. The child's father complied with the Office of Family and Children's ("OFC") requirements, and reunification was the goal of the case plan. Before reunification could be finalized, the foster parents filed a petition to adopt the child. The father contested *405 the adoption, and the trial court denied the petition.
On appeal, we held "because the CHINS action was pending in juvenile court when the [foster parents] filed their petition to adopt in the Saint Joseph Probate Court, the probate court did not have jurisdiction to grant it." E.B., 733 N.E.2d at 5. Further, we attempted to distinguish our supreme court's decision in T.B. Although in T.B., the CHINS proceeding and adoption proceeding affected different rights, we focused on the goals of the different proceedings, noting that the CHINS proceeding in E.B. was directed at reunifying the father and child, while the adoption proceeding "involved a third party attempting to adopt a child when her father's parental rights had never been terminated." Id. at 6.
We next engaged in an extensive analysis of the "jurisdiction" issue in In re Infant Girl W., 845 N.E.2d 229 (Ind.Ct. App.2006), trans. denied. There, a child was adjudicated a CHINS in Morgan County and placed in foster care with two women in a committed relationship. The biological mother voluntarily terminated her parental rights, and OFC's plan was for the foster parents to adopt the child. The trial court found that OFC's plan was not in the child's best interest and directed OFC to place the child for adoption with a married couple. Separately, the foster parents filed a petition to adopt the child in Marion County. The biological mother consented to the adoption, and OFC withheld its consent solely because it felt compelled to do so by the trial court's order in the CHINS case. The Marion County probate court found that OFC's reasons for refusing to consent were not in the child's best interest and that OFC's consent was not required. The probate court then granted the adoption petition. However, the Morgan County trial court refused to recognize the adoption and refused to dismiss the CHINS petition.
On appeal, the OFC argued that principles of comity[3] prevented the Marion County probate court from exercising jurisdiction. Noting that "comity comes into play only where there is precise or substantially similar identity of parties, subject matter, and remedies in the competing actions," we concluded that comity would not prevent the probate court from considering the adoption petition because the parties to the two actionsthe adoption action and the CHINS actionwere different and the actions had divergent subject matter and remedies. Infant Girl W., 845 N.E.2d at 240. We concluded: "That there is a simultaneous CHINS and/or TPR proceeding does not in any way divest the probate court of its exclusive jurisdiction." Id. Rather, we determined that the consent statute, Indiana Code Section 31-19-9-1, "disentangles this ostensible jurisdictional knot." Id.
Pursuant to the consent statute, although a probate court retains exclusive jurisdiction over an adoption case, OFCwhich, during the pendency of a TPR proceeding, is the child's legal guardianmust be given an opportunity *406 to consent to the adoption. I.C. § 31-19-9-1(a)(3). If OFC refuses to consent to the adoption, the probate court must determine whether OFC was acting in the best interests of the child in withholding its consent. I.C. § 31-19-9-8(a)(10); see also In re Adoption of L.C., 650 N.E.2d 726, 729-30 (Ind.Ct.App. 1995). Ultimately, we are persuaded that the consent statute enables the probate court to retain exclusive jurisdiction over an adoption proceeding even as it respects the opinion of OFC, which is the child's legal guardian and petitioner in the simultaneous TPR proceeding.
Id. Although we agreed with the outcome of E.B., we were:
of the opinion that the better way to have resolved the case would have been to look to the consent statute rather than the respective goals of the pending actions. Thus, OFC could have withheld its consent, and if the probate court believed that the consent was unreasonably withheld, we could have reviewed the decision for reasonableness.
Id. at 241. In sum, we concluded that the probate court properly exercised jurisdiction over the foster parents' petition to adopt the child.
Shortly after In re Infant Girl W., we again considered the "jurisdiction" issue in In re J.D.B., 867 N.E.2d 252 (Ind.Ct.App. 2007), trans. denied. There, a child was born to a fourteen-year-old mother and a twenty-nine-year-old father. The child was later found to be a CHINS and placed in foster care. A petition to terminate the parental rights of the mother was filed and granted, and a petition to terminate the parental rights of the father was filed. Also, a petition to adopt the child was filed by the foster parent. The foster parent alleged that the father's consent was unnecessary because the child was born out of wedlock and was conceived as a result of the father's sexual misconduct with a minor. DCS consented to the adoption, and the trial court found that the father's consent was not required and granted the adoption.
On appeal, we tried to harmonize T.B., E.B., and Infant Girl W. We concluded "there are simply no circumstances present that carry this case outside the ambit of T.B.," which allowed simultaneous consideration of the CHINS and adoption proceedings. J.D.B., 867 N.E.2d at 257. As for E.B., which did not allow simultaneous consideration of the CHINS and adoption proceedings, we noted that E.B. was not dispositive because the CHINS proceeding and the adoption were not "at odds with each other," as the goal of the CHINS proceeding was termination of father's parental rights and DCS had consented to the adoption. Id. at 256. As for Infant Girl W., we observed that, unlike that case, DCS had consented to, rather than opposed, the adoption.
Nevertheless, Indiana Code Section 31-19-9-1 supports the same conclusion we reached in our analysis focusing on the goals of the CHINS, TPR, and adoption proceedings. This is so because the consent statute permitted [the father] to participate in the adoption proceedings. See Ind.Code § 31-19-9-1 (requiring consent of father who's [sic] paternity has been established). While ultimately the adoption court determined that his consent was not needed, the adverse outcome does not negate the fact that [the father] had an opportunity to present evidence to show that his consent was required and appeal the probate court's ruling that his consent was not required. The consent statute also permitted DCS to voice its assessment of [the foster parent's] adoption of [the child]. DCS conveyed its approval of the adoption by providing its consent, *407 and [the child's] case manager testified in both hearings. Accordingly, we conclude that the probate court had jurisdiction to rule on the adoption petition.
Id. at 258.
Finally, we addressed the "jurisdiction" issue again in In re H.N.P.G., 878 N.E.2d 900 (Ind.Ct.App.2008), trans. denied, cert. denied, and we again attempted to harmonize T.B., E.B., and Infant Girl W. In H.N.P.G., the child was the subject of a CHINS action. Although the biological mother's parental rights were terminated, the father was incarcerated and his parental rights had not been terminated. The foster parents and the father's mother and stepfather filed petitions to adopt the child. The father contested the adoptions, but the probate court granted the foster parents' petition to adopt the child.
On appeal, the father argued that the probate court did not have jurisdiction to grant the adoption petition during the pendency of the CHINS action. We concluded that E.B., which did not allow simultaneous consideration of the CHINS and adoption proceedings, was inapplicable because, "where the [DCS] does not pursue reunification, our court has concluded that our holding in E.B. does not control." H.N.P.G., 878 N.E.2d at 904 (citing J.D.B., 867 N.E.2d at 256). We determined that the goals of the CHINS and the adoption proceedings were consistent and that the probate court had jurisdiction to consider the adoption petition.
[T]he BCDCS attempted to terminate [the father's] paternal rights, but its petition was denied because although the BCDCS "acted reasonably and expeditiously in this manner," [the father] "has only recently been involved in this case. Despite the fact that he is in Prison and despite the fact that he might be in prison for a long time, the Court [is] not prepared to terminate his parental rights." Appellant's App. p. 119. Although the petition to terminate [the father's] rights was denied, the BCDCS does not support the unification of [the father] and [the child]. Moreover, the BCDCS recommended that the court grant the Foster Parents' petition to adopt [the child]. Tr. pp. 59, 88. The goal of the adoption proceeding is to create a new family unit for [the child] and this is entirely consistent with the goal of the pending CHINS proceedings. Consequently, we conclude that this is a case in which "a court with probate jurisdiction may adjudicate an adoption matter simultaneously with the juvenile court's adjudication of a CHINS proceeding." See J.D.B., 867 N.E.2d at 257.
Id. at 905.
Here, we are again tasked with harmonizing the statutes and appellate opinions regarding simultaneous CHINS and adoption proceedings. Although our supreme court held in T.B. that courts may simultaneously consider CHINS and adoption revocation proceedings, E.B. holds that courts cannot simultaneously consider CHINS and adoption proceedings. Some of T.B. and E.B.'s progeny hold that CHINS proceedings and adoption proceedings may be considered simultaneously if the goals of the proceedings are the same. Here, the goal of the CHINS action was reunification of Child with Father while the goal of the adoption proceeding was adoption of Child by Foster Parents. Thus, the goals of the proceedings were not the same. However, we conclude that the statutory analysis found in Infant Girl W. is more persuasive and compatible with our supreme court's opinion in T.B. As in Infant Girl W., we are persuaded that the consent statutes, found at Indiana Code Chapter 31-19-9, enabled the trial court to consider the *408 adoption proceeding despite the pending CHINS action.
DCS points out that the results here the trial court approving a CHINS permanency plan of reunification with Father but also granting Foster Parents' petition to adopt Childappear inconsistent. We conclude that the CHINS plan of reunification is relevant in determining whether DCS's refusal to consent to the adoption was reasonable. Any inconsistency in the proceedings can be resolved by consideration of whether the trial court's rulings regarding consent to the adoption were proper.

II. DCS's Consent
Indiana Code Section 31-19-9-1(a) provides: "Except as otherwise provided in this chapter, a petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent to adoption has been executed by the following:.. . (3) Each person, agency, or county office of family and children having lawful custody of the child whose adoption is being sought." However, "[c]onsent to adoption, which may be required under [Indiana Code Section 31-19-9-1], is not required from any of the following: . . . (10) A legal guardian or lawful custodian of the person to be adopted who has failed to consent to the adoption for reasons found by the court not to be in the best interests of the child." I.C. § 31-19-9-8(a).
The relevant burden of proof is described in Indiana Code Section 31-19-10-1.2(d), which provides:
If a petition for adoption alleges that a legal guardian or lawful custodian's consent to adoption is unnecessary under IC XX-XX-X-X(a)(10) and the legal guardian or lawful custodian files a motion to contest the adoption under section 1 of this chapter, the legal guardian or lawful custodian has the burden of proving that the withholding of the consent to adoption is in the best interests of the person sought to be adopted.
Further, "[t]he party bearing the burden of proof in a proceeding under this chapter must prove the party's case by clear and convincing evidence." I.C. § 31-19-10-0.5. Thus, here, DCS had the burden of demonstrating by clear and convincing evidence that its withholding of consent to the adoption was in Child's best interests.
DCS refused to consent to Foster Parents' adoption of Child. However, the trial court found that DCS's consent was not required because DCS was not acting in Child's best interest by withholding consent. In particular, the trial court found:
[A] petition for adoption may be granted over the refusal of DCS to consent if it is shown that DCS is not acting in the child's best interest in withholding consent. . . . The DCS offered no evidence to show that the adoptive parents were not fit; to the contrary, at each CHINS review hearing the DCS offered evidence and the Court found that the child's placement with the adoptive parents met the special needs and best interest of the child. The only evidence presented by DCS was that father had (reluctantly) complied [with] most of the requirements of the CHINS dispositional decree and because the child would be with family. Mere biological relationship is not sufficient to support the burden of proof which the DCS must meet.
DCS has failed to carry its burden of proof.
The evidence is clear and convincing; therefore, the consent of DCS to the adoption is not required.
DCS's App. p. 31 (internal citations omitted). On appeal, DCS argues that the trial court applied the wrong standard by requiring DCS to show that the Foster Parents *409 were "not fit." Id. We agree with DCS.
The standard here is not whether DCS proved the Foster Parents unfit. Rather, the standard is whether DCS proved by clear and convincing evidence that its withholding of consent to the adoption was in Child's best interests. On that issue, the trial court found that DCS proved only "father had (reluctantly) complied [with] most of the requirements of the CHINS dispositional decree and because the child would be with family. Mere biological relationship is not sufficient to support the burden of proof which the DCS must meet." Id.
Although evidence of a mere biological relationship may be insufficient to meet DCS's burden, our review of the record reveals that DCS and Father presented significantly more evidence than just a biological relationship. Furthermore, we must note that our supreme court emphasized the importance of that biological relationship when it held:
Despite the differences among Indiana's appellate court decisions confronting child placement disputes between natural parents and other persons, most of the cases generally recognize the important and strong presumption that the child's best interests are ordinarily served by placement in the custody of the natural parent. This presumption does provide a measure of protection for the rights of the natural parent, but, more importantly, it embodies innumerable social, psychological, cultural, and biological considerations that significantly benefit the child and serve the child's best interests. To resolve the dispute in the caselaw regarding the nature and quantum of evidence required to overcome this presumption, we hold that, before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child. The presumption will not be overcome merely because "a third party could provide the better things in life for the child." [Hendrickson v. Binkley, 161 Ind.App. 388, 396, 316 N.E.2d 376, 381 (1974).] In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria. The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person. This determination falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review. A generalized finding that a placement other than with the natural parent is in a child's best interests, however, will not be adequate to support such determination, and detailed and specific findings are required. [In re Marriage of Huber, 723 N.E.2d 973, 976 (Ind.Ct.App.2000)].
In re Guardianship of B.H., 770 N.E.2d 283, 287 (Ind.2002). Although B.H. addressed guardianship proceedings and not adoptions, its holding clearly applies with equal if not greater force in adoption cases *410 given their permanency. See In re G.Y., 904 N.E.2d 1257, 1259 (Ind.2009) ("The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is `perhaps the oldest of the fundamental liberty interests.'") (internal citations omitted).
Here, DCS and Father presented evidence that, although Father was initially resistant to comply with the DCS's requirements and had one positive drug test, he eventually began complying with DCS's requirements and participated in services. He found appropriate housing, completed drug and alcohol treatment, participated in parenting education, complied with visitations, completed a psychological and parenting assessment, and maintained contact with his DCS family case manager. His visitations with Child increased from supervised to unsupervised and, by early 2009, Father had unsupervised visitation with Child each week from Saturday through Tuesday. The CHINS plan recommended by DCS was reunification of Child with Father, and the trial court approved that plan in both March 2008 and March 2009. At the adoption hearings in August 2009, DCS noted that Father and Child are bonded. In fact, Child was often upset when he had to leave Father's residence. The DCS family case manager testified that Father had a long history of supervised and unsupervised visitation leading up to the current overnight visitations. She had no concerns for "the child's safety and wellbeing" in Father's care. Tr. p. 218.
Here, Father substantially complied with DCS's requirements to gain custody of his child. Child was living with him for a significant portion of each week, and the CHINS case was progressing toward Father having full-time custody. The trial court had repeatedly approved DCS's proposed permanency plan of reunification with Father. Despite Father's progress and DCS's efforts, the trial court granted Foster Parents' petition to adopt Child.[4] Under these circumstances, we conclude that DCS met its burden of demonstrating by clear and convincing evidence that its withholding of consent to the adoption was in Child's best interests. The trial court's finding to the contrary is clearly erroneous.
Because DCS was Child's legal custodian, its consent to the adoption was required. I.C. § 31-19-9-1(a)(4). DCS did not consent to the adoption and its withholding of consent to the adoption was in Child's best interests. Given the evidence presented at the adoption hearings, we conclude that DCS met its burden of proof. As a result, we must reverse the trial court's grant of Foster Parents' petition to adopt Child.

Conclusion
We conclude that the trial court had the ability to consider simultaneously both the CHINS action and the Foster Parents' petition to adopt Child. However, we conclude *411 that the trial court erred when it determined that DCS's withholding of consent to the adoption was not in Child's best interest. Because we reverse based upon DCS's lack of consent to the adoption, we need not determine whether the trial court erred when it found that Father's consent to the adoption was unnecessary. We reverse the trial court's grant of Foster Parents' petition to adopt Child.
Reversed.
BAILEY, J., and MAY, J., concur.
NOTES
[1] Indiana Code Section 31-35-2-3 provides that a "probate court has concurrent original jurisdiction with the juvenile court in proceedings on a petition to terminate the parent-child relationship involving . . . a child in need of services under this chapter." This action involves a CHINS case, not a petition to terminate Father's parental rights.
[2] None of the parties argue that personal jurisdiction was lacking.
[3] The court in Infant Girl W. defined comity as follows:

When an action is pending before a court of competent jurisdiction, other courts must defer to that court's extant authority over the case. Courts observe this deference in the interests of fairness to litigants, comity between and among the courts of this state, and judicial efficiency. Trial Rule 12(B)(8) implements these principles. This rule applies where the parties, subject matter, and remedies of the competing actions are precisely the same, and it also applies when they are only substantially the same.
Infant Girl W., 845 N.E.2d at 238 (quoting Thacker v. Bartlett, 785 N.E.2d 621, 625 (Ind. Ct.App.2003)).
[4] DCS properly points out that finding that DCS improperly withheld consent under these circumstances would:

send a signal to parents that if you are involved in the CHINS system, why bother complying with services (let alone doing extra services as did Father), as the back door of adoption poses a considerable threat to any parent who is not perfect. What parent would not question just why they should work with DCS and the juvenile courts, court appointed advocates or GAL, if the foster parents or other parties are just going to file an adoption petition and therein terminate parents' rights, even though the juvenile court orders everyone to work towards reunification[?]
DCS's Reply Br. at 5.