

I N  T H E

# Court of Appeals of Indiana

In the Matter of the Involuntary Termination of the
Parent-Child Relationship of:

E.S. (Minor Child)

and

B.S. (Mother),

*Appellant-Respondent*



FILED

Feb 28 2025, 9:36 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

and

Kids' Voice of Indiana,

*Appellee-Guardian Ad Litem*

February 28, 2025

Court of Appeals Case No.
24A-JT-894

Appeal from the Marion Superior Court

The Honorable Alicia Gooden, Judge

**Opinion by Judge May**
Judges Tavitas and DeBoer concur.

**May, Judge.**

[1] B.S. ("Mother") appeals the involuntary termination of her parental rights to E.S. ("Child"). She argues the termination must be reversed because the juvenile court abused its discretion when it denied her motion to stay the termination proceedings until an adoption proceeding regarding Child could be decided. We affirm.

## Facts and Procedural History

[2] Mother[1] gave birth to Child on September 6, 2020. On September 10, 2020, the Department Child Services ("DCS") filed a petition alleging Child was a Child in Need of Services ("CHINS") because Mother tested positive for cocaine and marijuana at the time of Child's birth, Mother admitted she used cocaine while pregnant with Child, Mother had a "significant history of drug abuse . . . that seriously hinder[ed] her ability to care for [Child][,]" and Mother had been involved with DCS before regarding her other children, who were ultimately

---

[1] At the beginning of the CHINS proceedings, Mother named two men who could be Child's father. However, DNA tests excluded both, and Child's father remains unknown.

adopted by a relative. (Ex. Vol. II at 23.) The juvenile court held a hearing the same day. In its order on that hearing, the court noted Mother's testimony that "[B.D., someone Mother knew,] was planning to adopt [Child]. Mother and the alleged fathers have all agreed to the adoption." (*Id*. at 29.) The juvenile court found Mother indicated B.D. had hired an adoption attorney to pursue the matter and B.D.'s next meeting with that attorney was September 16, 2020. The juvenile court ordered DCS to investigate B.D. as a possible placement for Child.[2] At the end of the hearing on DCS's CHINS petition, the juvenile court placed Child in foster care, where she has remained throughout these proceedings. On December 14, 2020, the juvenile court adjudicated Child a CHINS based on Mother's substance abuse.

[3] Throughout the CHINS case, Mother was non-compliant with services. She routinely tested positive for illegal substances, inconsistently participated in substance abuse rehabilitation, and regularly did not attend visitation with Child. At a periodic review hearing on May 17, 2021, Mother asked the juvenile court to place Child with Mother's adult daughter, H.P. The juvenile court ordered DCS to complete the necessary process to place Child with H.P. However, H.P. and her boyfriend tested positive for marijuana and the juvenile court determined they were not a proper placement. The juvenile court continued to conduct periodic review hearings in 2021 and early 2022, each

---

[2] The record does not indicate why B.D. did not adopt child.

time noting in its order that Mother was not compliant with services and tested positive at drug screens.

[4] On March 3, 2022, the juvenile court held a periodic review hearing. During that hearing, Mother asked the juvenile court to place Child with her friend, A.W., and A.W.'s partner, A.S., because she was "concerned with [Child's] safety in the current foster home." (*Id*. at 65.) The juvenile court ordered DCS to complete the necessary process to determine whether A.W. and A.S. were a proper placement. At the hearing, the juvenile court also changed Child's permanency plan from reunification to adoption based on Mother's non-compliance with services and positive drug screens.

[5] On March 28, 2022, Mother signed a consent authorizing A.W. to adopt Child. On March 30, 2022, A.W. filed a petition to adopt Child in Shelby County. On April 6, 2022, DCS filed a petition to terminate Mother's parental rights based on Mother's non-compliance with services. On April 20, 2022, A.W. filed a motion to intervene in the CHINS proceedings.[3] The juvenile court held a hearing on the motion to intervene on May 26, 2022. DCS and Child's Guardian ad litem ("GAL") objected to A.W.'s motion. On May 27, 2022, the juvenile court denied A.W.'s motion to intervene in the CHINS proceedings because allowing A.W. to do so was not in Child's best interests and because A.W. did not qualify for intervention pursuant to Indiana Code section 31-32-

---

[3] The record suggests A.W.'s motion to intervene was the first time the juvenile court was made aware of A.W.'s petition to adopt Child.

2.5-1, which allows foster parents or unlicensed kinship caregivers to request intervention in CHINS proceedings.

[6] On June 6, 2022, the juvenile court held a pre-trial hearing on DCS's petition to terminate Mother's parental rights at which Mother argued the juvenile court should stay or dismiss the termination proceedings pending the probate court's decision on A.W.'s adoption petition. The juvenile court directed counsel to file briefs regarding this issue.

[7] On August 23, 2022, Mother filed her brief in support of dismissal or stay of the termination proceedings pending the resolution of A.W.'s petition to adopt Child. Mother argued that adoption was a remedy to the issues that DCS sought to address via termination proceedings – Mother's parental rights to Child would be terminated, and Child would be adopted – thus, "if there even was any chance that [Mother and Child's] relationship had threatened [Child], that risk is gone." (App. Vol. II at 51.) Mother also argued it was "in the best interests of judicial efficiency and fairness to stay the current termination proceedings and dismiss this case if adoption is successful." (*Id.*) (emphasis omitted). She contended that, if A.W.'s petition to adopt Child was successful, it would relieve the juvenile court from expending additional resources in considering the termination matter. DCS filed its brief on the issues the same day, arguing Mother was "essentially arguing placement and who should adopt [Child]" and for "[Child] to be free to adoption by [A.W.] or current placement, termination of Mother's rights is necessary[.]" (*Id.* at 58.)

[8] On August 31, 2022, the juvenile court held a hearing on Mother's motion to stay or dismiss the termination petition. On an undisclosed date before that hearing, Child's foster parent, P.W., filed a petition to adopt Child in Marion County. On September 7, 2022, the juvenile court issued its order on Mother's motion to stay or dismiss the termination proceedings. It found Mother voiced concerns about Child's safety while placed with P.W. because of "[P.W.'s] paramour's criminal record." (*Id.* at 73.) It also found A.W. had not provided DCS with the required information for it to make a recommendation on Child's placement with her. The court's order neither granted nor denied Mother's motion to stay or dismiss the termination proceedings. In the same order, the juvenile court denied Mother's request that A.W. be present during Mother's visitation with Child.

[9] On September 19, 2022, DCS filed a motion to dismiss A.W.'s adoption petition.[4] That motion[5] noted the requirements of Indiana Code section 31-19-8-1, which states a probate court may grant an adoption only after it hears the evidence and DCS provides a period of supervision "if the child is the subject of an open child in need of services action." DCS argued "there has been no period of supervision during which [Child] has been placed with [A.W.]" and

---

[4] The juvenile court received notice of this motion on September 27, 2022.

[5] It is unclear from the record what occurred after DCS's motion to dismiss.

thus "[A.W.] has failed to bring forth a petition for adoption [that] this Court is able to grant." (*Id.* at 62.)

[10] On November 27, 2023, the juvenile court held a fact-finding hearing on the termination petition. During that fact-finding hearing, Mother and DCS stipulated to the existence of certain facts in the CHINS case, including that Mother had not participated in services and routinely tested positive for drugs. On February 26, 2024, the juvenile court entered an order terminating Mother's parental rights to Child, and then the trial court entered an amended order on March 25, 2024. In the 552 days between when Mother filed her brief in support of her motion to dismiss or stay the termination proceedings on August 23, 2022, and when the juvenile court entered its order terminating Mother's parental rights on February 26, 2024, the juvenile court had not ruled on Mother's motion to dismiss or stay the proceedings.[6] In its amended termination order, the juvenile court explained regarding Mother's motion to stay:

> 36. The Court has a compelling interest in achieving permanency for [Child]. The Court notes that if it denied the request to terminate the parent-child relationship, on the basis that Mother had signed a consent to adopt, and thereafter [A.W.'s] Petition was denied, there would not be permanency for [Child]. To the contrary, DCS would have to file another

---

[6] Nor had the probate court ruled on A.W.'s adoption petition.

termination action on behalf of [Child], thereby extending the time to permanency.

* * * * *

42. The Court denied Mother's request to deny the termination petition on the grounds that she has executed a consent to adopt by [A.W.].

(*Id*. at 20-21.)

## Discussion and Decision

Mother argues the juvenile court should have granted her motion to stay the termination proceedings. We review a trial court's denial of a motion to stay under an abuse of discretion standard. *Fry v. Schroder*, 986 N.E.2d 821, 822-3 (Ind. Ct. App. 2013), *trans. denied*. An abuse of discretion occurs "when the decision misinterprets the law or clearly contravenes the logic and effect of the facts and circumstances before the court." *Smith v. Franklin Twp. Comm. School Corp.*, 151 N.E.3d 271, 273 (Ind. 2020). Mother argues the juvenile court abused its discretion because the termination proceedings should have been stayed pending the outcome of the adoption petition filed by A.W. Whether Indiana law requires a juvenile court to stay termination proceedings when a petition to adopt is filed is a question of law. We review questions of law de novo. *D.H. v. Common Wealth Apartments*, 231 N.E.3d 284, 286 (Ind. Ct. App. 2024).

[12] Probate courts have exclusive jurisdiction over adoption proceedings. Ind. Code § 31-19-1-2. Juvenile courts, with a few exceptions not relevant here, have exclusive jurisdiction over CHINS and termination proceedings. Ind. Code § 31-30-1-1. "CHINS proceedings and adoption proceedings may be considered simultaneously if the goals of the proceedings are the same." *In re Adoption of H.LW.*, *Jr.*, 931 N.E.2d 400, 406-7 (Ind. Ct. App. 2010), *trans. denied*.

[13] Here, the juvenile court entered a permanency plan of adoption for Child on March 3, 2022. On March 28, 2022, Mother signed a consent authorizing A.W. to adopt Child, and on March 30, 2022, A.W. filed a petition to adopt Child. On April 6, 2022, DCS filed a petition to terminate Mother's parental rights to Child. Because the permanency plan in the CHINS and termination cases was adoption, the goals of the proceedings were the same, and the juvenile court and the probate court could proceed simultaneously. *Contra In re Adoption of E.B.*, 733 N.E.2d 4, 6 (Ind. Ct. App. 2000) (when goal of CHINS proceedings is reunification, the probate court does not have concurrent jurisdiction such that it can grant an adoption petition prior to resolution of CHINS case), *trans. denied*.

[14] Mother contends[7] that, despite the concurrent jurisdiction, it would be more judicially efficient if the juvenile court stayed the termination proceedings until

---

[7] In support of her argument, Mother distinguishes the facts in her case from those in *In re C.D.*, 141 N.E.3d 845 (Ind. Ct. App. 2020), *trans. denied*. In that case, after the child had been removed from parents, she spent time both with paternal grandmother and with a non-relative foster placement. The parents were willing to

the probate court decided the adoption matter. However, she cites no precedent, nor have we found any, that would necessitate a stay of the juvenile court proceedings under the circumstances herein. Additionally, requiring a juvenile court to stay CHINS or termination proceedings in a situation such as this could allow parents to repeatedly delay termination by successively filing consent[8] for someone to adopt, even if the proposed adoption has little probability of being granted. It is against public policy to require a juvenile court to stay its proceedings, leaving the child for an extended period without permanency. *See, e.g., Baker v. Marion Co. Ofc. of Family and Children*, 810 N.E.2d 1035, 1041 n.4 (Ind. 2004) (child cannot be made to "languish, forgotten, in custodial limbo for long periods of time without permanency"). The juvenile court cited these very concerns in its order, and we conclude the juvenile court did not abuse its discretion when it did not grant Mother's motion to stay. *See, e.g., Gomez v. Gomez*, 887 N.E.2d 977, 983 (Ind. Ct. App.

---

sign consents for the grandmother to adopt the child. Before a determination was made about who would adopt the child, the trial court terminated the parents' parental rights. *Id*. at 851. On appeal, the parents argued the juvenile court violated their parental right under the Fourteenth Amendment of the United States Constitution to determine the child's adoptive parent. *Id*. at 855. We held that the termination of the parents' parental rights to the child extinguished their right to determine the person who would adopt the child. *Id*. at 856. Mother contends a different result should be reached herein because she had consented to A.W.'s adoption of Child and A.W. had filed a petition to adopt Child. While the facts herein and in *C.D.* are distinguishable, *C.D.* does not contain a legal holding regarding whether a trial court must stay CHINS or termination proceedings when a parent consents to an adoption. As that is the issue herein, *C.D.* is inapposite.

[8] When DCS has lawful custody of a child, DCS's consent to adoption is required. *See* Ind. Code § 31-19-9-1(2)(3). DCS did not consent to A.W.'s adoption of Child. Child has never been in A.W.'s care; since a few days after her birth, Child has resided with her foster family, who had also filed a petition to adopt Child. When, as here, the evidence before the juvenile court clearly supports termination, Mother's right to consent to Child's adoption by A.W. does not divest the juvenile court of authority to terminate Mother's parental rights.

2008) (no abuse of discretion when there is a rational basis for trial court's decision).

## Conclusion

[15] The juvenile court did not abuse its discretion when it did not stay the termination proceedings pending resolution of A.W.'s petition to adopt Child. Accordingly, we affirm the involuntary termination of Mother's parental rights to Child.

[16] Affirmed.

Tavitas, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Peter Laramore
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE – INDIANA DEPARTMENT OF CHILD SERVICES

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE – KIDS' VOICE OF INDIANA

Katherine Meger Kelsey
Kids' Voice of Indiana
Indianapolis, Indiana