**John LUTZ, Personal Representative of the Estate of Richard Pierre Lemon, Appellant–Respondent,**

v.

**Karen LEMON, Appellee–Petitioner.**

No. 20A03–9809–CV–381.

Court of Appeals of Indiana.

Sept. 15, 1999.

Shawn P. Ryan, South Bend, Indiana, Attorney for Appellant.

Mark A. Matthes, Yoder Ainlay Ulmer & Buckingham, Goshen, Indiana, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge

John Lutz, as personal representative of Richard P. Lemon's estate, appeals the trial court's order determining that Richard's wife, Karen Lemon, was the owner of a gun collection. Lutz raises one issue which we restate as whether the trial court erred in concluding that the gun collection passed to Karen as a matter of law upon Richard's death. We affirm.

The facts most favorable to the judgment follow. Richard and Karen Lemon were married in 1964. During their marriage, the Lemons acquired a gun collection. In 1995, Richard filed for divorce. Some time later, Richard removed the gun collection from the marital residence. During the dissolution proceedings, the dissolution court entered a provisional order which read in relevant part:

"[T]he court now issues the following provisional orders:

1. ´ The marital residence ... shall continue to be occupied jointly by both parties with the exceptions specified within this Order;

2. The Husband shall occupy the bedroom and adjoining bathroom he now occupies exclusively. The Wife shall occupy the bedroom and adjoining bathroom she now occupies.

* * * * *

6. The Husband is ordered to remove all firearms and ammunition from the residence if he has not already done so excepting one handgun. The Husband is permitted to have said firearm in his bedroom only, with the bedroom door closed.

* * * * *

11. The Wife is granted exclusive possession of the motor vehicle she is now has [sic] possession of, and the Husband is ordered not to enter into said vehicle for any reason;

12. The Husband is granted exclusive possession of the motor vehicles he now has possession of;

13. The Temporary Restraining Order is now continued as a Preliminary Injunction. It is ordered that any collections of items that have been personal collectibles shall remain personal property of the parties, shall not be treated or considered to be a part of the business property of either of the properties, and shall not be disposed of in any manner.

All of which is considered, adjudged and decreed this 24th day of October, 1995."

Record, pp. 201–202. Before the dissolution proceedings were completed, Richard died.

Karen filed a claim against the estate claiming ownership of the gun collection. Lutz, as personal representative of Richard's estate, filed a petition to liquidate estate assets so that he could pay claims against the estate. Lutz included the gun collection as an estate asset he intended to sell. Karen opposed the petition arguing the gun collection passed to her as personal property. After a hearing, the trial court concluded that based upon the dissolution court's provisional order, the gun collection had passed to Karen as a matter of law under the provisions of Ind.Code § 32–4–1.5–15.[1]

The sole issue is whether the trial court erred in concluding that the firearms passed to Karen pursuant to I.C. § 32–4–1.5–15. The statute reads in relevant part:

> "Personal property, other than an account, which is owned by two (2) or more persons is owned by them as tenants in common unless expressed otherwise in a written instrument. However, household goods *acquired during coverture* and *in possession of both husband and wife*, ..., shall upon the death of either become the sole property of the surviving spouse unless a clear contrary intention is expressed in a written instrument."

I.C. § 32–4–1.5–15 (emphasis added).[2] In their briefs, the parties disagree on whether the Lemons obtained the gun collection during their marriage and whether, at the time of his Richard's death, I.C. § 32–4–1.5–15 requires both parties to have shared actual possession of the gun collection.

■ We first address Lutz' argument that Karen has not met her burden in proving the gun collection was obtained during her marriage to Richard. In filing a claim against the estate, the burden of proof fell upon Karen. *See Walting v. Brown*, 139 Ind.App. 18, 22, 211 N.E.2d 803, 806 (Ind.Ct. App.1965) (claimant had burden of proving

an express or implied contract for payment for services rendered to decedent). On appeal, we may not reverse the judgment of the trial court following a bench trial unless the judgment is clearly erroneous. Ind. Trial Rule 52(A); *Stubbs v. Hook*, 467 N.E.2d 29, 31 (Ind.Ct.App.1984), *reh'g denied, trans. denied*. The trial court's findings are clearly erroneous only where the record lacks any evidence or reasonable inferences from evidence to support them. *In re Adoption of L.C.*, 650 N.E.2d 726, 729 (Ind.Ct.App.1995), *reh'g denied, trans. denied., cert. denied*, 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996). A general judgment entered by the trial court is presumed to be based on findings supported by the evidence and if the judgment is sustainable on any legal theory, it must be affirmed. *Smith v. Bruning Enterprises, Inc.*, 424 N.E.2d 1035, 1038 (Ind. Ct.App.1981).

■ Here, Price William Buntyn, a gun collector and friend of Richard and Karen's, testified in a videotaped deposition that the Lemons were married when he met them in 1983. He also testified that the relationship he and his wife had with the Lemons was based largely around the collection of guns. In fact, he testified that from 1983 until the time the Lemons sought a separation, the two couples would attend about five or six gun shows a year. During these gun shows, the Lemons would often purchase one or two guns. Buntyn testified that both Richard and Karen would be involved in the decisions to purchase the guns. After purchasing the guns, the Lemons would display the guns in a specific room in their home. During the deposition, Buntyn identified many of the guns contained in the Lemons' collection. Grace Buntyn, Buntyn's wife, testified in a deposition that the Lemons' collection consisted of at least 75 guns. This evidence

---

1. At trial, Lutz's attorney objected to testimony by Karen about the gun collection based upon the Dead·Man's Statute, Ind.Code § 34–1–14–6. The trial court took that objection under advisement. In his final order, the trial judge concluded that "it is of no import whether or not wife's testimony is permitted in this cause." Record, p. 260. We interpret the trial court's statement to mean that there was sufficient evidence to decide the matter without considering her testimony.

As we conclude the evidence other than Karen's testimony was sufficient to support the trial court's judgment, we will not address the applicability of the Dead Man's Statute to Karen's testimony.

2. Neither party raises an issue as to whether the gun collection is a household good under the statute.

supports the trial court's conclusion that the Lemons obtained their gun collection together during their marriage.

Despite this evidence, Lutz argues that Karen failed to present evidence identifying each individual gun in the collection. The evidence clearly supports Karen's argument that she and Richard acquired the gun collection over many years of their marriage. As Karen points out, Price William Buntyn's deposition testimony accounts for the accumulation of a large number of firearms. In contrast, Lutz offers no evidence to dispute Karen's claim that she and Richard obtained the gun collection during their marriage. Consequently, there is significant evidence from which the trial court could have concluded the Lemons acquired the gun collection during their marriage. *See In re Adoption of L.C.*, 650 N.E.2d at 729. Based upon this evidence, we affirm the decision of the trial court. *See id.*

We next consider whether I.C. § 32–4–1.5–15 requires actual possession of the gun collection by both Karen and Richard at the time of Richard's death. Lutz argues that Richard's possession of the gun collection outside the home renders the gun collection beyond the scope of I.C. § 32–4–1.5–15.[3] We disagree.

■■ This issue is one of statutory construction. Our supreme court has stated that:

> "[t]he object of statutory construction is to determine, give effect to, and implement the intent of the legislature. If a statute is susceptible to reasonable and intelligible construction, it is the duty of the court to construe it to give effect and validity to each provision thereof. The statute is examined as a whole, and while the language itself is analyzed, this Court will *refrain from overemphasizing a strict literal or selective reading of individual words.*"

*Sullivan v. Day*, 681 N.E.2d 713, 717 (Ind. 1997) (emphasis added) (citations omitted). Thus, we construe our statutes to prevent any absurdity or result the legislature, as a reasonable body, could not have intended.

*Chavis v. Patton*, 683 N.E.2d 253, 259 (Ind. Ct.App.1997).

■■ We have found no cases directly on point with regard to this statute. However, in *Poulson v. Poulson*, we held that I.C. § 32–4–1.5–15 presumes that husband and wife owned any household goods as joint tenants with rights of survivorship. *Poulson v. Poulson*, 691 N.E.2d 504, 507 (Ind.Ct.App. 1998). This form of joint ownership continues until the termination of the marriage. *Id.* at 506. Once a dissolution decree is entered, the joint tenants become tenants in common. *Id.* Likewise, upon the death of a spouse, the decedent's ownership interest vests in the surviving spouse. *Id.*

In *Poulson*, a married couple separated, and the wife filed a petition for dissolution of marriage. *Id.* at 505. The dissolution court dissolved the marriage and marital assets were distributed pursuant to a settlement agreement. *Id.* However, the settlement agreement failed to dispose of a 1966 dune buggy which Husband subsequently sold. *Id.* Wife filed a "Rule to Show Cause" alleging Husband owed her half the proceeds from the sale of the dune buggy. *Id.* After a hearing, the trial court ordered Husband to pay Wife one-half the sum obtained from the sale of the dune buggy. *Id.* Despite Husband's sole, actual possession of the dune buggy and its value upon sale, we held that, pursuant to I.C. § 32–4–1.5–15, Husband and Wife had still owned the dune buggy as joint tenants with right of survivorship until the dissolution court entered the dissolution decree changing the parties into tenants in common. *Id.* at 507.

■■ Here, Richard merely removed the gun collection from the marital residence. Under *Poulson*, this would not be enough to transform the joint tenancy with right of survivorship into a tenancy in common. *See id.* Moreover, the dissolution court specifically ordered "that any collections of items that have been personal collectibles shall remain personal property of the parties." Record, p. 202. Thus, Richard's removal did not destroy Karen's possessory interest and

---

3. Lutz points out that Richard had removed the gun collection from the home prior to the provisional order being issued by the dissolution court.

present right to possession of the gun collection. Therefore, Richard and Karen remained joint tenants with right of survivorship under I.C. § 32–4–1.5–15. *See Poulson,* 691 N.E.2d at 506.

It is common for spouses to separate while their dissolution proceedings are pending. As a consequence of such separation, household goods will necessarily be in the physical possession of only one spouse. If the word "possession" in I.C. § 32–4–1.5–15 is interpreted only in the sense of actual physical possession, the joint ownership rights would terminate at separation and not when the final decrees disposes of the couples' respective property interests. We do not believe the legislature intended such a potentially harsh and absurd interpretation in a case like this where the dissolving court had specifically reserved the final disposition of the collection and certainly had the power to award it to either spouse or order its division between them. *See Chavis,* 683 N.E.2d at 259. Thus, we hold that Richard's sole, physical possession of the gun collection did not destroy Karen's rights of survivorship. Therefore, we hold that the trial court did not err in ruling that, pursuant to I.C. § 32–4–1.5–15, the gun collection passed to Karen as a matter of law.

For the foregoing reasons, we affirm the trial court's order granting Karen ownership of the gun collection.

Affirmed.

DARDEN, J., and ROBB, J. concur