

**FILED**

Mar 11 2015, 10:16 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

John P. Young
Young & Young
Indianapolis, Indiana

Sandra L. Blevins
Betz + Blevins
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ERIC N. ALLEN, PERSONAL
REPRESENTATIVE

Michael C. Cooley
Kevin G. Harvey
Allen Wellman McNew Harvey, LLP
Greenfield, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Supervised Estate of Gary Roberts, *Deceased* | March 11, 2015 |
| | Court of Appeals Cause No. 30A01-1407-ES-288 |
| Martha Blevins, *Appellant* | Appeal from the Hancock Circuit Court |
| | The Honorable Richard D. Culver, Judge |
| | Case No. 30C01-1311-ES-186 |
| *And* | |
| In re the Supervised Estate of Elizabeth A. Roberts, *Deceased* | Court of Appeals Cause No. 30A01-1407-ES-288 |
| | Appeal from the Hancock Circuit Court |
| Martha Blevins, *Appellant* | The Honorable Richard D. Culver, Judge |
| | Case No. 30C01-1311-ES-173 |

**Robb, Judge.**

# Case Summary and Issues

Gary Roberts died intestate on September 27, 2013, and his widow, Elizabeth Roberts, died testate on November 2, 2013. Martha Blevins filed a claim against Gary's Estate. Following a hearing, the trial court issued an order that concluded, among other things, that a gun collection located in the Robertses' home was "household goods" to which Elizabeth held a right of survivorship under Indiana Code section 32-17-11-29. Blevins appeals that order, raising two issues for review: (1) whether the trial court correctly determined that the gun collection met the requirements in Indiana Code section 32-17-11-29(c)(1) to create a right of survivorship; and (2) whether the trial court abused its discretion by admitting into evidence, over Blevins's hearsay objection, three exhibits related to the purchase and origin of the gun collection. Concluding that the gun collection does not fit within the term "household goods," we reverse and remand.[1]

# Facts and Procedural History[2]

Gary and Elizabeth Roberts were married for approximately thirty-one years. On September 27, 2013, Elizabeth shot and killed Gary because she believed it

---

[1] Because our conclusion that the gun collection does not fall within the scope of the term "household goods" is outcome-determinative, we do not address Blevins's claim that the trial court abused its discretion by allowing the admission of hearsay evidence.

[2] We heard oral argument in this case on February 17, 2015 at Wabash College. We would like to thank the Wabash faculty, staff, and students who attended, and we commend counsel for their preparedness and oral advocacy.

was necessary to protect law enforcement officers who were coming to the residence. Elizabeth shot herself and died on November 2, 2013.

[3] Prior to their deaths, the couple amassed a sizeable gun collection consisting of approximately 330 guns, bayonets, knives, gun powder, magazines, ammunition, and other assorted weaponry and munitions (collectively referred to as "the gun collection" or "the collection"). A vast majority of the collection was kept in the Robertses' basement in a "gun room." Appellant's Appendix at 476. Elizabeth had access to the gun room, but she had not gone into it for thirteen years prior to the day Gary was killed.

[4] A number of guns were kept throughout other common areas of the house, including the kitchen, bedroom, and living room. Additionally, Elizabeth kept a shotgun on the kitchen table and two guns in the couple's bedroom. Gary enjoyed target shooting and shooting clay pigeons, and Elizabeth went shooting with Gary on occasion.

[5] Early in the marriage, Elizabeth was involved in purchases adding to the gun collection, and she would go with Gary to make purchases. Elizabeth bought a few guns for Gary. However, as the marriage went on, Gary purchased many guns without Elizabeth's knowledge, and at the time Gary died, Elizabeth did not know how many guns and other items were in the collection. Elizabeth supported Gary's hobby of collecting guns and believed that it was a good investment.

[6]    Gary died intestate on September 27, 2013, and Elizabeth was the sole heir to Gary's estate. At Elizabeth's request, Eric Allen petitioned for appointment as the personal representative of Gary's Estate, and Allen was appointed on September 30, 2013. On November 2, 2013, Elizabeth died testate, and Allen was appointed as the personal representative of Elizabeth's Estate pursuant to her written will. After Elizabeth's death, Allen sold the gun collection at auction for a net profit of $505,599.74.

[7]    On October 16, 2013, Blevins filed a claim against Gary's Estate, seeking damages for personal injuries she claimed to have sustained as a result of a car accident caused by Gary's negligence. Allen disallowed Blevins's claim on October 22, 2013. On December 3, 2013, Allen filed a Motion for More Definite Statement as to Blevins's claim. Blevins filed in kind on December 9, 2013, and Allen filed his response on December 11, 2013. On behalf of Gary's Estate and Elizabeth's Estate (collectively, the "Estates"), Allen filed a Consolidated Petition for Determination of Ownership of Tangible Personal Property and Instructions. The purpose of that petition was for the trial court to determine how the Robertses' assets should be divided among the Estates.

[8]    A hearing was held on the Estates' petition on February 4, 2014. Blevins stipulated that, except for the gun collection, the contents of the Roberts residence were household goods. On June 18, 2014, the trial court issued its findings of fact, conclusions of law, and ruling on the Estates' petition. That ruling concluded that the gun collection constituted household goods. Consequently, Elizabeth had a right of survivorship in the gun collection, and

its entire value was allocated to Elizabeth's Estate. Blevins now brings this interlocutory appeal, arguing that the trial court erred by admitting three exhibits over her hearsay objection and that the guns should be classified as personal property owned as tenants in common rather than household goods.

# Discussion and Decision[3]

## I. Standard of Review

[9] When, as here, the trial court enters findings of fact and conclusions thereon, we apply the following two-tiered standard of review: we determine whether the evidence supports the findings and the findings support the judgment. The trial court's findings of fact and conclusions thereon will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. This court neither reweighs the evidence nor assesses the credibility of witnesses, but considers only the evidence most favorable to the judgment.

---

[3] Before reaching the merits of this appeal, we take a moment to address an aspect of this case that has been allowed to pass uncontested by the parties and the trial court: both estates had the same personal representative throughout the entire proceedings and thus the same attorney. We are troubled by this dual appointment. It is possible that the estates had different interests—in large part because Gary was shot and killed by Elizabeth. Allen was appointed personal representative of Gary's estate at Elizabeth's request and then of her estate by testamentary designation. It is noteworthy that separate or competing arguments were never made on behalf of the two estates, including competing arguments on whether the gun collection was in fact household goods, and all actions taken by Allen favored Elizabeth's estate. Additionally, as a result of this representation, some possibly applicable statutes and legal doctrines may have been forgone. *See, e.g., Heinzman v. Mason*, 694 N.E.2d 1164, 1168 (Ind. Ct. App. 1998) (applying the slayer rule and holding that principles of equity require a constructive trust to be created to prevent a person from benefitting from the felonious killing of another), *trans. denied*.

*Estate of Lee v. Lee & Urbahns Co.*, 876 N.E.2d 361, 366-67 (Ind. Ct. App. 2007) (citations omitted).

## II.   Indiana Code § 32-17-11-29 – "Household Goods"

This case turns on an interpretation and application of Indiana Code section 32-17-11-29.  That code section provides in pertinent part:

> (b)  Except as provided in subsection (c), personal property that is owned by two (2) or more persons is owned by them as tenants in common unless expressed otherwise in a written instrument.
>
> (c)  Upon the death of either husband or wife:
>
> > (1)  household goods:
> >
> > > (A)  acquired during marriage; and
> > >
> > > (B)  in possession of both husband and wife . . .
> >
> > becomes the sole property of the surviving spouse unless a clear contrary intention is expressed in a written instrument.

Ind. Code § 32-17-11-29(b)-(c).  If the Estates are able to prove that the gun collection was (1) household goods; (2) acquired during marriage; and (3) in possession of both Gary and Elizabeth, then the gun collection became the sole property of Elizabeth immediately upon Gary's death.  But if one of those three elements has not been proven, then the gun collection is personal property owned by Gary and Elizabeth—meaning each estate is assigned half of the collection's value.  The burden is on the Estates to prove each element of Indiana Code section 32-17-11-29(c).  *Lutz v. Lemon*, 715 N.E.2d 1268, 1270 (Ind. Ct. App. 1999).  On appeal, Blevins argues that the Estates failed to establish each of the necessary elements.

[13] The term "household goods" is not defined in Chapter 11 of the Indiana Code,[4] and the parties rely on various sources from both inside and outside of Indiana to support their positions. This court has previously decided one case dealing with whether a gun collection met the elements set forth in Indiana Code section 32-17-11-29(c) in *Lutz*, 715 N.E.2d at 1268. However, the issue of whether the guns in *Lutz* fit within the definition of "household goods" was not disputed on appeal, and the court discussed only whether the guns were acquired during the parties' marriage and possessed by both parties. *Id.* at 1270-72. The Estates contend that *Lutz* presupposed that a gun collection is a household good and that the decision stands as precedent for the notion that such a collection is a household good. We do not agree that *Lutz* holds precedential value in that regard, because the issue was not placed in contention before this court. *Id.* at 1270 n.2 ("Neither party raises an issue as to whether the gun collection is a household good under the statute.").

[14] We believe our supreme court's decision in *Kramer v. Beebe*, 186 Ind. 349, 115 N.E. 83 (1917), provides a satisfactory definition of the term "household goods" as it is used in the statute. *Kramer* involved a class of persons seeking to restrain a county treasurer from levying upon their household goods to satisfy

---

[4] A section of Indiana's commercial code, which addresses warehouse liens, defines "household goods" as "furniture, furnishings, or personal effects used . . . in a dwelling." Ind. Code § 26-1-7-209(d).

A definition of "household goods" is also provided in Article 2.1 of the Indiana Code, which addresses the regulation of common carriers. That definition provides in relevant part that "household goods" includes "personal effects and property used or to be used in a dwelling when the effects and property are parts of the equipment or supply of that dwelling . . . ." Ind. Code § 8-2.1-17-9(a)(1).

delinquent taxes. The taxpayers' claim was based upon a section of the Indiana Code that prevented a county treasurer from levying upon household goods. After concluding that the code section at issue was in force, the court stated that "household goods" were "those articles with which a residence is equipped, other than fixtures, designed in their manufacture as instruments of the household, and embrace the articles necessary, convenient, or ornamental, requisite to enable the delinquent not merely to live, but to live in a convenient and comfortable manner." *Id.* at 357-58, 115 N.E. at 85-86.

[15] Whether an item or group of items of personal property qualifies as a household good should be determined on a case-by-case basis. To that point, we note that a collection of guns may be household goods in one case but not in another. Under the circumstances of this case, it is our collective belief that the Robertses' gun collection does *not* qualify as household goods.

[16] The sheer size of the collection, the varied items in the collection, and the manner in which it was stored are major factors leading us to the conclusion that the collection of weapons and munitions should not be categorized as household goods. If certain property provides some recreational or practical use, then it is more likely to be a household good. For example, a gun or set of guns kept for personal protection are likely to be classified as household goods. *Cf. In re Raines*, 170 B.R. 187, 188 (Bankr. N.D.Ga. 1994) (gun used for personal protection qualified as household goods under federal law). However, the facts indicate that the vast majority of the gun collection was not owned for personal protection, and at most, a few weapons kept in the bedroom and

kitchen were for that purpose. Indeed, the collection is so immense that it is difficult to imagine the collection, as a whole, played a role as an instrument of the household.

[17] Furthermore, the fact that a significant portion of the collection was kept in the basement—out of sight—is contrary to any argument that the collection served an "ornamental" function. *Kramer*, 186 Ind. at 357-58, 115 N.E. at 85-86. In truth, much of the collection went unused, untouched, and even unseen by the Robertses.

[18] We do not mean to suggest by our opinion in this case that guns or collections of other items may not be household goods. That said, we hold that the specifics of this gun collection make it such that it falls outside the definition of household goods that we have adopted from *Kramer*.

# Conclusion

[19] Concluding the gun collection does not fit within the meaning of the term "household goods" as it is used in Indiana Code section 32-17-11-29(c)(1), we reverse and remand.

[20] Reversed and remanded.

Riley, J., and Bradford, J., concur.